UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| PAMELA CENTENO, MARY HOFFMAN, SUSAN ROUTH, JANICE WILEN, LINDA EBY, and MARY JANE AURDAL OLSON, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JAY INSLEE, in his capacity as Governor of the State of Washington, KEVIN QUIGLEY, in his capacity as Secretary of the Department of Social and Health Services of the State of Washington; and SEIU HEALTHCARE 775NW,<br><br>                    Defendants. | NO. 2:14-cv-00200 MJP<br><br>THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONEY DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiffs allege as follows:

## I.     INTRODUCTION

1.1     Plaintiffs are individuals who provide in-home care services to adults with

disabilities ("Individual Providers"). Plaintiffs receive compensation for their services from the

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

State of Washington Department of Social and Health Services ("DSHS"), pursuant to a Medicaid waiver that DSHS received from the federal government.

1.2    The State of Washington compels Individual Providers to join and/or pay union dues or fees to defendant Service Employees International Union Healthcare 775 NW ("SEIU"), ostensibly for the purpose of funding SEIU's representation of Individual Providers' interests with regard to their compensation and other terms of their relationship with DSHS.

1.3    In compelling Individual Providers to join and/or make payments to SEIU, the State is violating Individual Providers' rights under the First Amendment to the United States Constitution, which forbids the government to compel individuals to join or financially support the speech of third parties. The State can point to no compelling interest that it seeks to achieve by this forced association, and any interest that the State has may be accomplished by means that do not invade Individual Providers' freedom of speech and association.

1.4.   The State contends that it may lawfully compel Individual Providers to support SEIU, under an exception to the First Amendment rule that allows states to compel their employees to pay dues to labor unions. However, the State may not invoke that exception here because, by its own admission, Individual Providers are not full-fledged employees of the State, but instead are merely deemed, by legislative fiat, to be State "employees" for the sole and limited purpose of collective bargaining. The rationale that permits states to compel their employees to pay union dues or fees does not apply in the context of the relationship between Individual Providers and the State and/or DSHS. Indeed, the United States Supreme Court confirmed this in its recent opinion in *Harris v. Quinn*, --- U.S. --- (Slip Op. June 30, 2014)

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 2

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

(striking down similar Illinois scheme forcing personal care providers to pay dues and/or fees to SEIU-Illinois & Indiana).

## II.   PARTIES

2.1    Plaintiffs Pamela Centeno, Mary Hoffman, Janice Wilen, Susan Routh, Linda Eby, and Mary Jane Aurdal Olson are individuals residing in the State of Washington. All are "Individual Providers" as defined in RCW 74.39A.240 and all have paid and/or are still paying agency fees pursuant to the statutes and contracts challenged in this litigation .

2.2    Defendant Jay Inslee is the Governor of the State of Washington. Defendant Kevin Quigley is the Secretary of the Department of Social and Health Services of the State of Washington ("DSHS"). Defendant SEIU Healthcare 775NW is a labor union that, according to its website, "represents more than 40,000 long-term care workers providing quality in-home care, nursing home care and adult day health services in Washington State and Montana."

## III.   JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because it includes a claim brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction to grant declaratory and related relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.2    The Court has personal jurisdiction over all Defendants because they reside in and transact business in the State of Washington.

3.3    Venue in this district is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this lawsuit occurred in this district, and because the Defendants reside in this district.

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 3

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# IV. CLASS ACTION ALLEGATIONS

4.1     The Class is comprised of all persons who satisfy both of the following criteria: (1) are currently, or have been at any time during the previous three years, Individual Providers within the meaning of RCW 74.39A.240; and (2) during a time that they were not members of SEIU, were (or are) subjected to compulsory payment of union dues or fees pursuant to RCW 41.56.113 and/or a collective bargaining agreement ("CBA") between SEIU and the State. For purpose of this class definition and this Complaint, "member" is defined as any Individual Provider who signed a membership application that was accepted by SEIU.

4.2     Plaintiffs satisfy the numerosity requirement. On information and belief, the Class would be comprised of thousands of Individual Providers.

4.3     Plaintiffs satisfy the commonality requirement. With respect to Plaintiffs' First Amendment claims, all members of the Class have been compelled to pay dues and or fees to SEIU, via automatic paycheck deductions or otherwise, pursuant to RCW 41.56.113 and/or a CBA, during a time when they were not members of SEIU. Those compulsory deductions violate the First Amendment rights of the Class because: (1) all of them have a right to be free from compelled association and/or mandatory financial support of SEIU's speech; (2) none of them are employees of the State; and (3) the State cannot satisfy the requirement that it demonstrate that the compulsory agency fee is the least restrictive means to accomplish a compelling government purpose. With respect to Plaintiffs' state law claims against SEIU, all members of the Class either have been or are likely to be targeted by SEIU in its unlawful scheme to induce them to sign "releases" of their claims against SEIU and the State.

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 4

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

4.4    Plaintiffs satisfy the typicality requirement. Their claims are typical of the Class because each of them was compelled to pay dues or agency fees to SEIU, despite being non-members of the union, and each is exposed to SEIU's unlawful attempt to induce Individual Providers to release their claims against SEIU and the State.

4.5    Plaintiffs satisfy the adequacy of representation requirement. Plaintiffs will adequately represent the class because they are able and willing to vigorously prosecute this action on behalf of themselves and class members. Plaintiffs do not have any interests that conflict with the class. Class counsel have significant experience in class action litigation, including class litigation on behalf of public sector employees, and have the resources and experience to prosecute this class action.

4.6    The prosecution of multiple individual actions by Individual Providers to redress Defendants' unlawful conduct would create the risk of inconsistent rulings. Such rulings would subject Defendants to differing standards of conduct.

4.7    The prosecution of individual actions by Independent Providers would as a practical matter dispose of the interests of absent Individual Providers, by creating standards of conduct that would be applicable to all Individual Providers alike.

4.8    The statutes and conduct challenged in this litigation apply to all members of the Class. Defendants treated all members of the Class similarly with respect to those statutes and that conduct.

4.9    The questions and issues common to the Class predominate over any matters that may require resolution on an individual basis. The crux of this dispute is the lawfulness of the State's policy requiring all non-member Individual Providers to pay agency fees to SEIU

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

pursuant to RCW 41.45.113. A class action is the most efficient means of adjudicating the rights and responsibilities of the defendants and the Class, and is far superior to numerous individual lawsuits challenging the same policies.

## V. FACTS ENTITLING THE CLASS TO RELIEF

### The Statutes and Agreements at Issue

5.1     Plaintiffs are Individual Providers within the meaning of RCW 74.39A.270.
RCW 74.39A.240 defines an Individual Provider as

> a person, including a personal aide, who has contracted with [DSHS] to provide
> personal care or respite care services to functionally disabled persons under the
> Medicaid personal care, community options program entry system, chore services
> program, or respite care program, or to provide respite care or residential services
> and support to persons with developmental disabilities under chapter 71A.12
> RCW, or to provide respite care as defined in RCW 74.13.270.

5.2     RCW 74.39A.270 deems Individual Providers to be State employees, but *only* for the purpose of forcing them to join SEIU, pay union dues, and/or pay an "agency fee" to SEIU in an amount equal to union dues. Individual Providers are expressly deemed to be *non*-employees of the State for every other purpose.

5.3     SEIU and the State enter into CBAs pursuant to the authority of RCW 74.39A.270. A true and correct copy of the current (2013-2015) CBA is attached at Exhibit A. The CBAs purport to cover "all individual providers" as defined by RCW 74.39A.240. Article 4 of the CBA is entitled "Union Membership and Union Security." Section 4.1 states, in relevant part:

> Not later than thirty (30) days following the first pay period of
> employment, or the effective date of employment, whichever is
> later, every [individual provider] covered by this Agreement *shall,
> as a condition to receive payment for services provided, become*

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

> *and remain a member of the Union* paying periodic dues, or for
> nonmembers of the Union, the fees uniformly required.

*Id.* (emphasis added). Section 4.2 ("Right of Non-Association") appears to establish that the

phrase "nonmembers of the Union" refers *only* to independent providers who meet the

qualifications as "religious objectors":

> It is the intent of this Agreement that the provisions of this Article
> safeguard the right of [individual providers] to remain non-
> members *based on bona fide religious tenets or teachings of a*
> *church or religious body of which such [individual provider] is a*
> *member.* Such home care workers shall pay an amount of money
> equal to the periodic dues and fees uniformly required under
> Section 4.1, to a nonreligious charity or to another charitable
> organization mutually agreed upon by the [individual provider] and
> the Union.

*Id.* (emphasis added).

5.4     RCW 41.56.113 requires the State to make automatic monthly deductions from

the payments Individual Providers receive from DSHS, and transfer those monies to SEIU. The

State has been making such deductions from non-member Individual Providers throughout the

period relevant to this lawsuit, although it appears that the State has recently ceased the

deductions from a very small number of non-member Individual Providers, at the request of

SEIU.

### Defendants' First Amendment Violations

5.5     RCW 41.56.113 violates the First Amendment rights of all Individual Providers

who are not members of SEIU, because it compels them to support the speech of a third party,

namely the union, and it is not the least invasive means for the State to serve a compelling state

interest. *Harris v. Quinn*, --- U.S. ----, 134 S. Ct. 2618 (2014) (First Amendment prohibited

Illinois to compel providers of home care to lend financial support to SEIU via compulsory

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 7

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

agency fees). SEIU is liable for this First Amendment violation because it has acted under color of state law by working jointly with the State to establish the statutory scheme that deprives Individual Providers of their First Amendment rights against compelled association. Having lobbied the State and campaigned to have an initiative passed to institute this unlawful scheme, it has benefitted enormously from that compelled association, in the form of agency fees that Individual Providers have been forced to pay out of the monies they receive in return for their services. SEIU worked with the State to establish and institute the compulsory and automatic agency fee deductions challenged in this lawsuit, and continues to collect millions of dollars in compulsory "fees" under the authority of state statutes and the CBA.

5.6     The CBA violates the First Amendment rights of Individual Providers because it purports to compel them to "become and remain a member of the union" as a "condition to receive payment for services provided" by the Individual Provider. The State may not compel an individual to join or support the advocacy of any group. SEIU is liable for this First Amendment violation because it has acted under color of state law by working jointly with the State to establish the statutory scheme that deprives Individual Providers of their First Amendment rights against compelled association, and by working with the State to create and implement the CBA.

### Defendants' Scheme to Secure "Releases" from Putative Class Members

5.7     SEIU has engaged in a coordinated, widespread and deliberately deceitful effort to secure from non-member Individual Providers "releases" of their claims against SEIU and the State arising from the unlawful compelled deductions made pursuant to RCW 41.56.113. On information and belief, the State has been aware of these efforts, has at least tacitly approved of

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 8

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

them, and stands to benefit if the scheme is allowed to continue. Plaintiffs have been subjected to this unlawful scheme.

5.8 SEIU has sent "mailers" to non-member Individual Providers, which include a cover letter that (1) encourages them to sign an attached membership application; and (2) represents that the decision to join will be cost-free to the Individual Provider. However, the attached application form includes, in the middle of its "fine print," the following language:

> I hereby knowingly release both SEIU 775NW and the State of Washington from any future legal claims or liability related to the State's past collection of agency fees from me pursuant to CBA Sec. 4.1 and/or RCW 41.56.113.

The cover letter does not disclose that the attached "membership application" includes this purported release of claims. Further, its representation—that signing the membership form will be at "no additional cost" to the Individual Provider—is patently false; if the attached release were to be legally effective, each Individual Provider could be releasing thousands of dollars in legal claims against SEIU and the State, purportedly in "exchange" for becoming a member.

5.9 In addition to its mailers, SEIU maintains a page on its website where it encourages non-member Individual Providers to "Become a Member!" *See* www.775NW.SEIU.org/page/s/join775. Here again, the "membership" application contains the same release of claims as the one attached to the mailer, again buried in the middle of the application's fine print. The membership application is "introduced" by a video extolling the benefits of membership; the video makes no mention whatsoever that the membership application also purports to confiscate from the applicant potentially thousands of dollars in legal claims.

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 9

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## VI.   CAUSES OF ACTION

### Violation of First and Fourteenth Amendments and 42 U.S.C. § 1983

Plaintiffs incorporate all of the above allegations as if fully set forth herein.

6.1     Defendants' enforcement of RCW 41.56.113 via deduction of fees from the wages of non-member Individual Providers or otherwise violates Individual Providers' First Amendment rights to be free from compelled association with SEIU.  Defendants have acted under color of State law, in violation of 42 U.S.C. § 1983.

6.2     In representing to Individual Providers that they are required to "become and remain" members of SEIU as a condition to receiving payment for their services, subject only to a limited "religious objector" exception, Defendants have violated Individual Providers' First Amendment rights to be free from compelled association.  Defendants have acted under color of State law, in violation of 42 U.S.C. § 1983.

### Unjust Enrichment

Plaintiffs incorporate all of the above allegations as if fully set forth herein.

6.3.    Individual Providers have conferred benefits upon SEIU in the form of agency fees they have been compelled to pay, through deductions made by the State from their compensation.  SEIU acted in concert with the State to arrange for these deductions to go to SEIU's coffers, and it knowingly and willingly accepted those dues payments.  The circumstances under which those payments were made—the unlawful compulsion of non-members Individual Providers to make agency fee payments—render it unjust for SEIU to retain those monies, and gives Individual Providers a right to have those dues restored to them.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## VII.   RELIEF REQUESTED

### Declaratory and Injunctive Relief

7.1    An actual justiciable controversy currently exists regarding the right of non-member Individual Providers to be free from compulsory fee payments to SEIU as a condition to receive payments for their services.  Plaintiffs seek a declaration that RCW 41.56.113 unlawfully requires non-member Individual Providers to pay agency fees to SEIU, and an injunction prohibiting further enforcement of that statute and any other scheme to compel non-Member Individual providers to pay any of their money to SEIU.

7.2    An actual justiciable controversy currently exists regarding the lawfulness of the CBA provision purporting to require that all Individual Providers "become and remain" SEIU members, subject to a limited "religious objector" exception, in order to receive payments for their services.  Plaintiffs seek a declaration that this provision violates the First Amendment.

### Restitution and Damages

7.4    Plaintiffs seek an order restoring to non-member Individual Providers all fees that they have paid to SEIU beginning from three years prior to the filing of this lawsuit or, alternatively, an award of damages in the amount of such fees.  Plaintiffs further seek an award of nominal damages for violation of their rights under the First Amendment.

### Attorney's Fees and Costs

7.5    Plaintiffs seek an award of all reasonable fees and costs, including without limitation for attorney's fees pursuant to 42 U.S.C. § 1988 and any other applicable statute, and/or an award of fees based on the common fund doctrine.

### Further Relief

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

7.6    Plaintiffs request such other relief as the Court deems just and equitable.

DATED this 6th day of February, 2015.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Plaintiff

By    s/ *Michael P. Brown*

Jeffrey I. Tilden, WSBA #12219
Michael P. Brown, WSBA ##45618
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email:    jtilden@gordontilden.com
          mbrown@gordontilden.com


**CARSON & NOEL PLLC**
Attorneys for Plaintiffs

By s/ *Wright A. Noel*

Wright A. Noel, WSBA #25264
20 Sixth Avenue NE
Issaquah, WA  98027
Telephone: (425) 837-4717 ext 106
Facsimile:  (425) 837-5396
Email:    wright@carsonnoel.com

THIRD AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY AND INJUNCTIVE
RELIEF - 12

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**Exhibit A**

# COLLECTIVE BARGAINING AGREEMENT



THE STATE OF WASHINGTON

AND

SERVICE EMPLOYEES INTERNATIONAL
UNION HEALTHCARE 775NW

EFFECTIVE
JULY 1, 2013 THROUGH JUNE 30, 2015



# 2013-2015

# Service Employees International Union Healthcare 775NW
## Home Care Workers
### 2013-2015

**PREAMBLE**

**ARTICLE 1 RECOGNITION** ...................................................................... 1

**ARTICLE 2 UNION RIGHTS** .................................................................... 1

   2.1   Union Representatives.......................................................... 1

   2.2   Access.................................................................................... 1

   2.3   Union Bulletin Boards........................................................ 1

   2.4   Websites ............................................................................... 2

   2.5   Orientation Materials Provided by Employer .................... 2

   2.6   Access to Pay Envelopes..................................................... 2

**ARTICLE 3 EMPLOYER RIGHTS** ............................................................ 3

   3.2   Rights Reserved to the Employer ....................................... 3

   3.5   Fulfillment of Statutory Obligation.................................... 4

**ARTICLE 4 UNION MEMBERSHIP AND UNION SECURITY** ................... 5

   4.1   Union Security..................................................................... 5

   4.2   Right of Non-Association.................................................... 5

   4.3   Indemnify and Hold Harmless ........................................... 6

**ARTICLE 5 BARGAINING UNIT INFORMATION** ................................... 6

   [NOTE: The following two paragraphs of Article 5.1 will remain in effect until a new payroll system is implemented in accordance with Article 13.].................................... 6

   *5.1*   *Information to be Provided* ............................................. 6

   *5.1*   *Information to be Provided* ............................................. 7

   5.2   Collection of Additional Information.................................. 7

   5.3   Privacy.................................................................................. 7

**ARTICLE 6 DEDUCTION OF DUES, CONTRIBUTIONS, AND FEES** ......... 8

   6.1   Dues Deductions ................................................................. 8

   6.2   Voluntary Deductions ......................................................... 8

   6.3   Implementation Costs......................................................... 8

**ARTICLE 7 PRODUCTION OF AGREEMENT** ......................................... 8

**ARTICLE 8 GRIEVANCE AND DISPUTE RESOLUTION**............................ 9

   8.1   Dispute Resolution Philosophy .......................................... 9

   8.2   Grievance Definition .......................................................... 9

| 8.3 | Grievance/Dispute Resolution Procedure | 9 |
|---|---|---|
| 8.4 | Time Limitations | 11 |

**ARTICLE 9 COMPENSATION** ........................................................................ **11**

| 9.1 | Wages | 11 |
|---|---|---|
| 9.2 | Certification Differentials and Mentor, Preceptor, and Trainer Pay | 11 |
| 9.3 | Mileage Reimbursement | 12 |

**ARTICLE 10 COMPREHENSIVE HEALTH CARE BENEFITS** .......................... **12**

| 10.1 | Coverage | 12 |
|---|---|---|
| 10.2 | Contributions | 12 |
| *10.3* | *Payroll Deductions* | 13 |
| *10.3* | *Payroll Deductions* | 14 |
| 10.4 | Purpose of Trust | 14 |
| 10.5 | Trust Agreement | 14 |
| 10.6 | Indemnify and Hold Harmless | 14 |

**ARTICLE 11 WORKER'S COMPENSATION** ...................................................... **14**

| 11.1 | Worker's Compensation Coverage | 14 |
|---|---|---|
| 11.2 | Worker's Compensation Premiums | 15 |
| 11.3 | Third Party Administrator | 15 |

**ARTICLE 12 PAID TIME OFF** ....................................................................... **15**

| 12.1 | Accrual | 15 |
|---|---|---|
| 12.2 | Use | 15 |

**ARTICLE 13 PAYROLL, ELECTRONIC DEPOSIT AND TAX WITHHOLDING** ...... **15**

| 13.1 | Modern Payroll System | 15 |
|---|---|---|
| 13.2 | Twice Monthly Payment | 16 |
| 13.3 | Timely and Accurate Payment | 16 |
| 13.4 | Electronic Deposit | 16 |
| 13.5 | Tax Withholding | 16 |
| 13.6 | Union Communications | 16 |
| 13.7 | Changes to Payroll and Payment Systems | 16 |

**ARTICLE 14 NO DISCRIMINATION** ............................................................... **16**

**ARTICLE 15 REFERRAL REGISTRY** .............................................................. **17**

| 15.1 | Eligibility for Referral Registry | 17 |
|---|---|---|
| 15.2 | Seniority Preference | 17 |
| 15.3 | Removal from Referral Registry | 17 |

15.4    Election of Remedies ............................................................... 18

**ARTICLE 16 TRAINING** ............................................................................. **18**

16.1    Training Partnership.................................................................. 18

16.2    Partnership Agreement.............................................................. 18

16.3    Coverage................................................................................... 18

16.4    Contributions ............................................................................ 19

16.5    Minimum Basic Training Requirements .................................... 20

16.6    Minimum Continuing Education Training Requirements................ 20

16.7    Exemptions from Minimum Training Requirements .................... 20

16.8    Minimum Training Requirements for Exempted Individual Providers ............ 21

16.9    Mentoring ................................................................................. 21

16.10    Advanced Training ................................................................ 21

16.11    Training Curriculum and Instructors ...................................... 21

16.12    Training Provisions, Tracking and Reporting ......................... 22

16.13    Access to Training ................................................................. 22

16.14    Indemnify and Hold Harmless............................................... 23

**ARTICLE 17 UNION-MANAGEMENT COMMUNICATIONS COMMITTEE**............... **23**

17.1    Purpose ..................................................................................... 23

17.2    Meetings ................................................................................... 23

**ARTICLE 18 DUTY TO BARGAIN**............................................................... **23**

**ARTICLE 19 CONSUMER RIGHTS** ............................................................. **24**

19.1    Information Regarding Consumers ............................................ 24

19.2    Consumer Confidentiality ......................................................... 24

19.3    Non-Waiver.............................................................................. 24

19.4    Consumers Not Subject to Grievance Procedure ...................... 24

**ARTICLE 20 POLICIES AND PRACTICES** .................................................. **24**

20.1    Medicaid Integration Projects ................................................... 24

20.2    Hours Cuts................................................................................ 25

20.3    Cash and Counseling................................................................. 25

20.4    Provider Reclassification........................................................... 25

20.5    Exclusion.................................................................................. 25

20.6    Delivery of Quality Home Care Services................................... 25

20.7    Changes to the Health Care Delivery System ............................ 25

**ARTICLE 21** ............................................................................................. **26**

**HOURS OF WORK** .......................................................................................................... **26**

    21.1   Hours of Work when Consumers have Complex Behavioral and Cognitive Issues 26

**ARTICLE 22 RETIREMENT BENEFITS** ........................................................................... **26**

    22.1   Intent .......................................................................................................... 26

    22.2   Development of a Retirement Benefit Trust ..................................... 26

    22.3   Development Funding ............................................................................ 27

**ARTICLE 23 UNINTERRUPTED IN-HOME CARE SERVICES** ..................................... **27**

**ARTICLE 24 SAVINGS OR SEPARABILITY CLAUSE** ................................................. **27**

**ARTICLE 25 COMPLETE AGREEMENT** ....................................................................... **28**

**ARTICLE 26 TERM OF THE AGREEMENT** ................................................................... **28**

    26.1   Effective Dates ........................................................................................ 28

    26.2   Successor Negotiations ......................................................................... 28

**APPENDIX A** ................................................................................................................ **A-1**

    Wage Scales

**APPENDIX B** ................................................................................................................ **A-3**

    Definitions

## PREAMBLE

This document constitutes an Agreement by and between the Governor of the State of Washington hereinafter referred to as the "Employer," and SEIU Healthcare 775NW hereinafter referred to as the "Union," and in accordance with the provisions of RCW 74.39A.270.

# ARTICLE 1
## RECOGNITION

SEIU Healthcare 775NW ("Union") is recognized as the sole and exclusive representative for all individual providers of in-home care services ("home care workers," "caregivers," or "individual providers") as defined in RCW 74.39A.240 and under the provisions of 74.39A.270, excluding supervisors, confidential employees, and all other employees. Provided there is no question concerning representation or the definition of the bargaining unit pursuant to statute and the rules of the Public Employment Relations Commission, if the Union merges with other organizations, consolidates parts of other organizations, modifies its name or makes any other similar changes, recognition by the Employer will follow as designated by SEIU Healthcare 775NW and the Service Employees International Union. The parties also recognize that other agencies and/or contractors or subcontractors of the Employer may continue to be responsible for implementation and administration of certain provisions of this Agreement as specifically provided herein or as directed by the Employer.

# ARTICLE 2
## UNION RIGHTS

**2.1    Union Representatives**
The Employer shall recognize Union advocates and Union staff representatives in the course of their representational duties. The Union shall advise the State's Labor Relations Division of the Office of Financial Management of the names and phone numbers of Union advocates and representatives by written notice within thirty (30) days of appointment by the Union and include the nature, scope and authority granted each by the Union.

**2.2    Access**
Duly authorized representatives of the Union may have access at reasonable times to those areas of the Employer's premises that are open to the general public. Access to the Employer's premises shall be subject to the same general rules applicable to other non-employees and shall not interfere with or disturb the normal operation of the Employer. Advocates and other worker representatives shall perform representational activities or other Union business with individual providers only during the non-working time of the individual provider and shall not otherwise interfere with the work of individual providers or home care services provided.

**2.3    Union Bulletin Boards**
The Union shall have a right to bulletin board space in the offices of the Employer, its agencies, contractors, or subcontractors that individual providers necessarily frequent due to work-related business. The Union shall be solely responsible for the costs and maintenance of all bulletin boards. The Union will provide bulletin boards (no larger than two feet by three feet [2'x3']). The bulletin boards will be clearly marked as Union bulletin boards and will be

maintained by Union worker representatives and/or Union staff. Union communications may not be posted in any other location or agency.

The parties agree that the Union and the Employer or its agencies, contractors or subcontractors (whichever is appropriate) will discuss the location in the facility for the Union bulletin board, and if they are unable to agree on a location the Employer will attempt to remedy the situation, appropriate to their subcontracted agent. The Employer shall inform contractors and subcontractors of the rights of the Union to bulletin board space.

**2.4 Websites**
Websites maintained by the Aging and Disability Services Administration of the Department of Social and Health Services (ADSA/DSHS) that individual providers might reasonably access to seek employment-related information shall contain a link to the Union's website, provided that the link is in compliance with RCW 42.52.160 and RCW 42.52.180.

**2.5 Orientation Materials Provided by Employer**
Orientation materials distributed by the Employer, its agencies, contractors or subcontractors to individual providers shall include union membership applications and union orientation materials. Union materials distributed by the Employer shall be neutral in tone. It shall be the Union's responsibility to provide the Employer with sufficient copies of such materials for distribution during orientation and training.

**2.6 Access to Pay Envelopes**
The Employer agrees to include information provided by the Union in pay envelopes sent to individual providers, subject to the following conditions:

A.  The Union shall provide such materials to the Department no later than thirty (30) calendar days prior to the first day upon which the Union requests that the materials be included in pay envelopes mailed to individual providers.

B.  Except by consent of the Employer, the size and weight of such materials to be included in the pay envelopes for any pay period shall not exceed two (2) pieces of printed materials, one (1) of which may be no larger than eight and one-half inches by eleven inches (8.5"x11") and no heavier than twenty pound (20lb.) weight, and the other of which may be a pre-printed number ten (#10) or smaller return envelope of standard weight.

C.  The subject matters and contents of any materials provided shall be in conformance with RCW 42.52.160 and RCW 42.52.180.

D.  The Union agrees to reimburse the Department for any increase in postage costs arising from the inclusion of the Union materials.

## ARTICLE 3
## EMPLOYER RIGHTS

3.1     It is understood and agreed by the parties that the Employer has core management rights. Except to the extent modified by this Agreement, the Employer reserves exclusively all the inherent rights and authority to manage and operate its facilities and programs. The parties agree that all rights not specifically granted in this Agreement are reserved solely to the Employer and the Employer has the right to decide and implement its decisions regarding such management rights. The wages, benefits, hours, and working conditions of bargaining unit members shall continue to be mandatory subjects of bargaining between the parties and as provided in Article 18, Duty to Bargain.

3.2     **Rights Reserved to the Employer**
Examples of the rights reserved solely to the Employer, its agents and officials and to the extent these rights may be limited by other provisions of this Agreement as expressly provided herein include, but are not limited to, the right:

A.     To operate so as to carry out the statutory mandate of the Employer.

B.     To establish the Employer's missions, programs, objectives, activities and priorities within the statutory mandates.

C.     To plan, direct and control the use of resources, including all aspects of the budget, in order to achieve the Employer's missions, programs, objectives, activities and priorities; however, this paragraph shall not be interpreted to limit the Union's right to advocate for budget allocations that may be different from what the Employer may propose.

D.     To manage, direct and control all of the Employer's activities to deliver programs and services.

E.     To develop, modify and administer policies, procedures, rules and regulations and determine the methods and means by which operations are to be carried out.

F.     To establish qualifications of individual providers and reasonable standards of accountability except as otherwise limited by this Agreement under Article 16, Training.

G.     To make and execute contracts and all other instruments necessary or convenient for the performance of the Employer's duties or exercise of the Employer's powers, including contracts with public and private agencies, organizations or corporations and individuals to pay them for services rendered or furnished.

H.   To develop the means and processes necessary for the establishment of a referral registry of individual providers and prospective individual providers.

I.   To determine the management organization, including recruitment, selection, retention and promotion to positions not otherwise covered by this Agreement.

J.   To extend, limit or contract out any or all services and/or programs of the Employer except as otherwise limited under Article 18, Duty to Bargain and specific to contracting out of bargaining unit work.

K.   To take whatever actions the Employer deems necessary to carry out services in an emergency. The Employer shall be the sole determiner as to the existence of an emergency in keeping with a reasonable and prudent standard.

L.   To modify any and all operations and work requirements in order to more efficiently and effectively provide services as a result of any existing and/or new laws, rules and regulatory provisions of state and/or federal origin which may in any way affect the Employer's ability to provide services.

M.   To determine the method, technological means and numbers and kinds of personnel by which operations are undertaken.

N.   To maintain and promote the efficiency of public operations entrusted to the Employer.

3.3   The above enumerations of Employer rights are not inclusive and do not exclude other Employer rights not specified, including but not limited to those duties, obligations or authority provided under RCW 74.39A.250 through RCW 74.39A.280 and to the extent not otherwise expressly limited by this Agreement. The exercise or non-exercise of rights retained by the Employer shall not be construed to mean that any right of the Employer is waived.

3.4   No action taken by the Employer with respect to a management right shall be subject to a grievance or arbitration procedure or collateral action/suit, unless the exercise thereof violates an express written provision of this Agreement.

3.5   **Fulfillment of Statutory Obligation**
As provided under RCW 74.39A.270 (5) this Agreement expressly reserves:

The right of the Washington State Legislature to make programmatic modifications to the delivery of state services under RCW 74, including standards of eligibility of consumers and individual providers participating in the programs under this title, and the nature of services provided.

Nothing contained in this Agreement shall be construed as to subtract from, modify or otherwise diminish these rights in any manner.

## ARTICLE 4
## UNION MEMBERSHIP AND UNION SECURITY

**4.1 Union Security**

Not later than thirty (30) days following the first pay period of employment, or the effective date of employment, whichever is later, every home care worker covered by this Agreement shall, as a condition of employment and continued eligibility to receive payment for services provided, become and remain a member of the Union paying the periodic dues, or for nonmembers of the Union, the fees uniformly required. The Employer shall cause the State as payor, but not as the employer, to enforce this union security provision according to RCW 41.56.113 by deducting from the payments to bargaining unit members the dues required for Union membership, or, for nonmembers of the Union, a fee equivalent to the dues. Any individual provider home care workers who fail to satisfy this obligation shall, within thirty (30) days of written request by the Union to the Employer, be provided written notice of their discontinued eligibility to receive payment for services until such a time as this obligation is satisfied. Subsequent to written notice being issued, any such individual provider home care worker who fails to satisfy this obligation within thirty (30) days shall have his or her eligibility to receive payment from the State for providing services discontinued.

**4.2 Right of Non-Association**

It is the intent of this Agreement that the provisions of this Article safeguard the right of home care workers to remain non-members based on bona fide religious tenets or teachings of a church or religious body of which such home care worker is a member. Such home care workers shall pay an amount of money equal to the periodic dues and fees uniformly required under Section 4.1, to a nonreligious charity or to another charitable organization mutually agreed upon by the home care worker affected and the Union. On at least a quarterly basis, the home care worker shall furnish written proof to the Union that such payment has been made. Any home care worker who claims a right of non-association based on bona fide religious tenets or teachings of a church or religious body of which such home care worker is a member shall provide written notice of that claim to the Union, and shall, at the same time, provide the Union with the name(s) and address(es) of one (1) or more nonreligious charitable organizations to which the home care worker is prepared to make alternative payments in lieu of the payments required by this union security provision.

Within sixty (60) days after it receives written notice of a claimed right of non-association, the Union shall provide a written response to the worker, setting forth the position of the Union as to both:

A. The eligibility of the home care worker to make alternative payments; and

B.   The acceptance or rejection by the Union of the charitable organization(s) suggested by the home care worker.

Any disputes regarding the eligibility of the home care worker to make alternative payments and/or if the Union and home care worker are unable to mutually agree to a nonreligious charitable organization, the matter shall be forwarded to the Public Employment Relations Commission (PERC) for final disposition.

**4.3   Indemnify and Hold Harmless**
The Union and each home care worker authorizing the assignment of pay for the purpose of payment of union dues hereby agree to undertake to indemnify and hold harmless from all claims, demands, suits or other forms of liability that shall arise against the Employer for or on account of any deduction made from the pay of such home care worker. This paragraph shall not be interpreted to limit the right of the Union to use the Dispute Resolution Process contained in this agreement to collect dues, fees, and contributions owed.

# ARTICLE 5
## BARGAINING UNIT INFORMATION

**[NOTE: The following two paragraphs of Article 5.1 will remain in effect until a new payroll system is implemented in accordance with Article 13.]**

**5.1   *Information to be Provided***
*The Employer shall provide information about the bargaining unit and each member of the bargaining unit and shall provide this information to the Union on a regular monthly basis. Such information shall be transmitted electronically in a common, commercially-available electronic format specified by the Union, and shall include the home care worker's full name, individual provider number, cumulative lifetime hours worked as an individual provider, hours or units (day, week, or month) worked in a month for which payment has been made, home address, mailing address, home phone number, personal wireless telephone numbers, electronic mail addresses, wage rate, program or service code, amount paid during the current month of payment, union member type and deduction type, vacation (or paid time off) hours paid and vacation (or paid time off) hours forfeited.*

*The Employer shall make a good faith effort to provide other information to the Union, if not otherwise prohibited by force of law, including hire date, a unique home care worker identifier number, termination date, date of birth, gender, primary preferred language, relationship to consumer employer and marital status. The Employer and the Union shall coordinate to reconcile any questions about the bargaining unit information and records.*

**[NOTE: The following two paragraphs of Article 5.1 will become effective upon implementation of a new payroll system in accordance with Article 13.]**

**5.1    *Information to be Provided***
*The Employer shall provide information about the bargaining unit and each member of the bargaining unit and shall provide this information to the Union on a regular monthly basis. Such information shall be transmitted electronically in a common, commercially-available electronic format specified by the Union, and shall include the home care worker's full name, unique individual provider number, cumulative lifetime hours worked as an individual provider, hours or units (day, week, or month) worked in a month for which payment has been made, home address, mailing address, home phone number, personal wireless telephone numbers, electronic mail addresses, hire date, contract termination date, whether termination is for convenience or default as stipulated in the IP Client Service Contract, date of birth, gender, marital status, wage rate, program or service code, amount paid during the current month of payment, union member type and deduction type, paid time off hours paid and paid time off hours forfeited.*

*Provided it can be done by the vendor within the appropriated budget for the project, the Employer will provide information to the Union on more specific reasons for contract termination (as stipulated in the IP Client Service Contract), primary preferred language and relationship to consumer employer. The Employer and the Union shall coordinate to reconcile any questions about the bargaining unit information and records.*

In addition, provided the Union enters into the appropriate data share and confidentiality agreement, the IP's social security number will be sent in a secure electronic format.

**5.2    Collection of Additional Information**
The Employer shall amend all of the employment-related documents and forms required to be completed by individual provider home care workers so as to allow individual provider home care workers to provide the Employer with electronic mail addresses and personal wireless telephone numbers.

**5.3    Privacy**
Unless otherwise provided for under Title 42 RCW, the following are exempt from public inspection and copying and shall not be released by the Employer except as necessary to comply with the provisions of this Agreement:

The residential addresses, residential telephone numbers, personal wireless telephone numbers, personal electronic mail addresses, social security numbers, and emergency contact information of individual provider home care workers as defined in RCW 74.39A.240 and the names, dates of birth, residential addresses, residential telephone numbers, personal wireless telephone numbers, personal electronic mail addresses, social security numbers, and emergency contact information of dependents of individual provider home care workers as defined in

RCW 74.39A.240, which may be held by the Employer in personnel records, public employment related records, or volunteer rosters, or are included in any mailing list of individual provider home care workers as defined in RCW 74.39A.240.

## ARTICLE 6
### DEDUCTION OF DUES, CONTRIBUTIONS, AND FEES

**6.1**    **Dues Deductions**
In accordance with RCW 41.56.113, the Employer shall cause the appropriate entity or agency to deduct the amount of dues or, for non-members of the Union, a fee equivalent to the dues from each home care worker's monthly payment for services (paycheck or direct deposit).

**6.2**    **Voluntary Deductions**
The Employer shall cause the appropriate entity or agency to deduct voluntary contributions to one (1) union fund or committee payable to the Union from each home care worker's monthly payment for services (paycheck) upon receipt of proper authorization for such deductions from the home care worker or the Union. The Employer shall allow deductions to such a fund or committee to be made in any amount specified by an individual provider. The deductions shall be transferred to the Union monthly by electronic means.

**6.3**    **Implementation Costs**
The cost of any new computer programming changes required by this Article shall be borne by the Employer. The ongoing regular cost of such deductions shall be borne by the Employer.

## ARTICLE 7
### PRODUCTION OF AGREEMENT

**7.1**    The Union and the Employer shall jointly share the costs of producing and printing this Agreement in sufficient quantities for distribution to the members of the bargaining unit, and of translating it in up to ten (10) languages (other than English) most commonly spoken among members of the bargaining unit as determined by the Union, provided that the cost to the Employer shall not exceed eighty thousand dollars ($80,000) during the life of this Agreement. Any costs over and above eighty thousand dollars ($80,000) shall be borne exclusively by the Union.

**7.2**    In addition to the actual text of the Agreement and by mutual agreement of the parties, the printed copy of the Agreement may contain introductory statements, highlights, or graphics included for the purposes of making the Agreement easier to understand and in order to provide the information most important to home care workers (such as their wage scales, benefits, and rights) in an easily-accessible, user-friendly format.

**7.3**   Regarding the production of the Agreement in languages other than English and the inclusion of introductory statements, highlights, or graphics, the parties agree that all disputes regarding the interpretation or application of this Agreement shall be determined based solely on the original English-language Agreement signed by the parties, and not upon any other language version or upon any introductory statements, highlights, or graphics.

**7.4**   To the extent that the Union incurs costs associated with this Article prior to the effective date of this Agreement and not exceeding eighty thousand dollars ($80,000), those costs shall be agreed upon and reimbursed by the Employer on or immediately after the effective date of this Agreement.

## ARTICLE 8
## GRIEVANCE AND DISPUTE RESOLUTION

**8.1**   **Dispute Resolution Philosophy**
The Employer and the Union commit to address and resolve issues in a fair and responsible manner at the lowest possible level, and to use mediation and conflict resolution techniques when possible. Our relationship depends on mutual respect and trust based on our ability to recognize and resolve disagreements rather than avoiding them. Prior to filing a grievance, the Union and the Employer will attempt wherever possible to resolve problems informally and not to resort to the formal grievance procedure.

**8.2**   **Grievance Definition**
A grievance is defined as a contention of a misapplication or violation concerning the application or interpretation of this Agreement.

**8.3**   **Grievance/Dispute Resolution Procedure**

Step 1. Informal Resolution
The home care worker and/or a Union representative may confer with the Employer's designated representative and attempt to resolve the issue informally.

Step 2. Written Grievance
If the grievance is not resolved at Step 1, the home care worker and/or Union representative shall set forth the grievance in writing including a statement of the pertinent facts surrounding the grievance, the date on which the incident occurred, the alleged violations of the Agreement, and the specific remedy requested.

The written grievance shall be submitted to the Employer within thirty (30) calendar days of the occurrence of the alleged violation or within thirty (30) calendar days of when the home care worker or the Union could reasonably have been aware of the incident or occurrence giving rise to the grievance. The written grievance shall be submitted by email.

The Employer or the Employer's designee shall meet with the grievant and his or her Union representative within fourteen (14) calendar days of receipt of the written grievance, in order to discuss and resolve the grievance. Subsequent to this meeting, if the grievance remains unresolved, the Employer will provide a written response to the grievance by email within fourteen (14) calendar days from the date the parties met to discuss the grievance. If the response does not resolve the grievance, the Union may, within fourteen (14) calendar days of receipt of the response, proceed to Step 4, Arbitration.

Step 3. (Optional) Mediation
As an alternative prior to final and binding arbitration in Step 4, if the matter is not resolved in Step 2 the parties may choose by mutual agreement to submit the matter to mediation in order to resolve the issue. The party requesting mediation of the dispute must notify the other party by email no later than fourteen (14) calendar days of receipt by the Union of the emailed response from the Employer in Step 2. The party receiving the request for mediation must notify the other party by email within fourteen (14) calendar days of receipt of the request whether or not it agrees to mediate the dispute. If the party receiving the request does not agree to mediate the dispute, the Union may, within fourteen (14) calendar days of the email notification of the decision not to mediate, proceed to Step 4, Arbitration.

If the parties agree to mediation, they shall select a neutral mediator. Both parties shall submit a statement of their position on the issue. The mediator may also bring the parties together in person to attempt to resolve the issue.

The parties shall each pay one half (1/2) the costs or fees, if any, of the neutral mediator. Each party shall be responsible for its own costs, including the costs of representation, advocacy and the costs of that party's appointed representatives.

If the issue is successfully resolved by mediation, the decision shall be binding on all parties, and shall, unless specifically agreed otherwise, form a precedent for similar issues. If the issue is not successfully resolved through mediation, the Union may, within fourteen (14) calendar days of receipt of a written declaration of impasse or rejection of a settlement offer from either party, proceed to Step 4, Arbitration.

Step 4. Arbitration
If the grievance is not settled at Step 2 or 3, it may, within the time frames noted above, be referred by the Union to final and binding arbitration. The arbitrator shall be mutually agreed upon by the parties, or, upon failure to agree upon an arbitrator, the Union shall, within fifteen (15) calendar days of the request for arbitration, request a list of seven (7) arbitrators from the American Arbitration Association. The parties shall select an arbitrator by alternately striking names from the list of seven (7) arbitrators. A coin toss shall determine which party shall first strike.

The award of the arbitrator shall be final and binding upon both parties. The parties shall each pay one half (1/2) the costs of the arbitration, including the fees of the arbitrator and the proceeding itself, but not including the costs of representation, advocacy, or witnesses for either party. The arbitrator shall have no power to add to, subtract from, or change any of the terms or provisions of this Agreement.

**8.4   Time Limitations**

The parties agree that the time limitations provided in this Article are essential to the prompt and orderly resolution of any grievance, and that each will abide by the time limitations. To this end, grievances must be processed within the periods of time specified above. Days are calendar days, and will be counted by excluding the first day and including the last day of timelines. When the last day falls on a Saturday, Sunday or holiday, the last day will be the next day that is not a Saturday, Sunday or holiday. Any grievance not properly presented in writing and within the time limits specified, or any grievance not moved to the next step within the specified time limits shall be considered to have been withdrawn. If the Employer fails to meet the time limitations specified, the Union may move the grievance to the next step. Time limitations may be extended by mutual agreement of the parties.

**ARTICLE 9**
**COMPENSATION**

**9.1   Wages**

Effective July 1, 2013, current home care workers will be placed on a step commensurate with their IP hours of work retroactively calculated to July 1, 2005. Bargaining unit home care workers will be paid according to the wage scales found in Appendix A. During the life of this Agreement wages shall be adjusted upward for each home care worker based upon accumulation of hours not including time spent as mentors pursuant to Section 9.2. All home care workers shall be paid strictly on an hourly basis. Except as modified by this Agreement, all home care workers shall be paid strictly according to the wage scales. Any non-hourly payment arrangements, or arrangements to pay any home care worker according to any other rate than the rates contained in Appendix A, are hereby void.

**9.2   Certification Differentials and Mentor, Preceptor, and Trainer Pay**

Employees who hold a valid Home Care Aide certification or submit a Certified Nursing Assistant license (or equivalent or greater medical license), shall be paid an additional twenty-five cents ($0.25) per hour differential to his/her regular hourly wage rate.

Employees who complete advanced training beyond the training required to receive a valid Home Care Aide certification (as set forth in Training Partnership curriculum) shall be paid an additional twenty-five cents ($0.25) per hour differential to his/her regular hourly wage rate. This advanced training

differential stacks on top of the certification differential described above (e.g., an employee who has completed the home care certification and the advanced training requirements shall be paid fifty cents ($0.50) above his/her regular hourly wage rate.)

Pursuant to Article 16.9, a home care worker who is assigned by the Training Partnership as a mentor, preceptor, or trainer of other home care workers or prospective home care workers shall be paid an additional one dollar ($1.00) per hour differential in addition to his or her regular hourly wage rate, and in addition to any other differentials or adjustments, for each hour that he or she works as a mentor, preceptor, or trainer. The Employer shall not be responsible for employing, paying, tracking or verifying hours of mentor work.

**9.3    Mileage Reimbursement**
Home care workers shall be compensated for the use of their personal vehicles to provide services to their consumers (such as essential shopping and travel to medical services) authorized under the care or service plans. Such compensation shall be paid on a per-mile-driven basis at the standard mileage rate recognized by the Internal Revenue Service up to a maximum of sixty (60) miles per month per consumer. Effective November 1, 2014, this maximum shall be increased to one hundred (100) miles per month per consumer. The Employer will make all necessary changes to work forms, the payroll system and the CARE tool to assure that accurate mileage can be tracked and compensated.

Home care workers providing transportation to services funded by the Home and Community Based Services (HCBS) waivers, the DDD Individual and Family Services Program, or the Veteran's Directed Home Services and identified in the consumer's Individual Support Plan, in excess of the above maximum per month, will be reimbursed up to an additional maximum authorized by the case manager.

## ARTICLE 10
## COMPREHENSIVE HEALTH CARE BENEFITS

**10.1    Coverage**
The Employer agrees to make periodic contributions on behalf of all home care workers covered by this Agreement to the SEIU 775 Multiemployer Health Benefits Trust Fund ("Trust") in the amount specified in Section 10.2 below.

If required to contribute to the cost of health care benefits through a payroll deduction, eligible home care workers shall provide written authorization before receiving coverage.

**10.2    Contributions**
The Employer shall contribute two dollars and sixty cents ($2.60) per Department-paid hour worked by all home care workers covered by this Agreement to the Trust, effective July 1, 2013. Effective July 1, 2014 the Employer shall contribute two dollars and eighty cents ($2.80) per Department -

paid hour worked by all home care workers covered by this Agreement to the Trust. Department-paid hours shall not include consumer participation hours, training hours, paid time off or vacations.

**[NOTE: The following paragraphs of Article 10.2 will remain in effect until a new payroll system is implemented in accordance with Article 13.]**

*Contributions required by this provision shall be paid to the Trust on or before the fifteenth (15th) day of the month following the month in which service hours are paid. Contributions shall be transmitted together with a remittance form as may reasonably be required by the Trust or their designee.*

*Eligibility for health care benefits shall be determined solely by the Trust.*

*The Trust shall determine the appropriate level of contribution, if any, by eligible home care workers; provided, however, that if such contribution is required to be a deduction from home care workers' paychecks performed by the State, such deduction shall be the same for each eligible home care worker and in whole dollar amounts. Ongoing costs for deduction of home care worker premiums for health care shall be paid by the Employer. At least sixty (60) days notice of changes in deduction amounts must be given to allow the Employer to implement requested changes.*

**[NOTE: The following paragraphs of Article 10.2 will become effective upon implementation of a new payroll system in accordance with Article 13.]**

*Contributions required by this provision shall be paid to the Trust in the month following the month in which service hours are paid. Once the payroll vendor has been chosen by the State pursuant to Article 13, the parties will meet to determine the specific date by which the contribution will be paid to the Trust. Contributions shall be transmitted together with a remittance form as may reasonably be required by the Trust or their designee.*

*Eligibility for health care benefits shall be determined solely by the Trust.*

*The Trust shall determine the appropriate level of contribution, if any, by eligible home care workers. Ongoing costs for deduction of home care worker premiums for health care shall be paid by the Employer. At least thirty (30) days notice of changes in deduction amounts must be given to allow the Employer to implement requested changes.*

**[NOTE: The language of Article 10.3 below will remain in effect until a new payroll system is implemented in accordance with Article 13.]**

### 10.3 *Payroll Deductions*
*With adequate advance notice of no fewer than sixty (60) days, the Employer shall perform any such premium-share payroll deductions as directed by the Trust and as authorized by any home care worker. Initial and ongoing computer*

*programming and operation costs associated with the implementation of this Article and Section shall be paid by the Employer.*

**[NOTE: The language of Article 10.3 below will become effective upon implementation of a new payroll system in accordance with Article 13.]**

**10.3    *Payroll Deductions***
*With adequate advance notice of no fewer than thirty (30) days, the Employer shall perform any such premium-share payroll deductions as directed by the Trust and as authorized by any home care worker.  Initial and ongoing computer programming and operation costs associated with the implementation of this Article and Section shall be paid by the Employer.*

**10.4    Purpose of Trust**
For the purposes of offering individual health care insurance, dental insurance, and vision insurance to members of the bargaining unit, the Employer shall become and remain a participating employer in the Trust during the complete life of this Agreement, and any extension thereof.

**10.5    Trust Agreement**
The Employer and the Union hereby agree to be bound by the provisions of the Fund's Agreement and Declaration of Trust, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated.  The Employer accepts the Employer Trustees of the Fund and their duly elected successors as its representatives on the Board.  The Union accepts the Union Trustees of the Fund and their duly elected successors as its representatives on the Board.   The Employer and the Union agree to cooperate with the Trustees of the designated Trust in distributing benefit plan information and in obtaining and providing such census and other data as may be required by the Trust.

**10.6    Indemnify and Hold Harmless**
The Trust shall be the policy holder of any insurance plan or health care coverage plan offered by and through the Trust.  As the policy holder, the Trust shall indemnify and hold harmless from liability the Employer from any claims by beneficiaries, health care providers, vendors, insurance carriers or home care workers covered under this Agreement.

## ARTICLE 11
## WORKER'S COMPENSATION

**11.1    Worker's Compensation Coverage**
The Employer shall provide worker's compensation coverage for all home care workers in the bargaining unit.  All home care workers shall complete any required health and safety training.

**11.2  Worker's Compensation Premiums**
The home care worker premium share for worker's compensation insurance shall be paid by the Employer. If applicable laws or rules prevent the Employer from paying the premium share at any time during the life of this Agreement, the Employer shall adjust each step of the wage scale established under Article 9 (Compensation) of this Agreement upward by an amount equivalent to the home care worker premium share for worker's compensation insurance.

**11.3  Third Party Administrator**
The Employer shall contract with a third party administrator in order to administer the worker's compensation coverage provided to home care workers in the bargaining unit. The third party administrator shall be responsible for claims management and verification, recommending and implementing risk management procedures, and preventing worker's compensation fraud.

## ARTICLE 12
## PAID TIME OFF

**12.1  Accrual**
Home care workers shall be eligible for paid time off (PTO). In lieu of the paid Independence Day holiday in the September 27, 2012 arbitration award, effective July 1, 2013 accrual of PTO shall be increased from one (1) hour of PTO for every forty (40) hours worked to one (1) hour for every thirty-five (35) hours worked. PTO hours shall cap at eighty-five (85) hours.

**12.2  Use**
Individual providers have the right to use PTO; however, in order to be eligible to be paid for PTO, a home care worker must have the consent of his or her consumer.

## ARTICLE 13
## PAYROLL, ELECTRONIC DEPOSIT AND TAX WITHHOLDING

**13.1  Modern Payroll System**
Provided a responsive bid within the appropriated budget is received, the State will adopt a modern payroll system for the purposes of calculating and making payments to individual providers no later than July 1, 2013.

The new system will, at a minimum, be capable of collecting and reporting demographic data, including but not limited to information outlined in Article 5, Bargaining Unit Information: calculating and applying variable wage rates; combining several consumers' service hours in a single payment; adding and editing deductions at variable levels for health care premiums, Taft-Hartley fund contributions, taxes, union deductions, wage garnishments, and other purposes; providing web-based reporting of hours; providing for direct deposit into multiple bank or other financial institution accounts; and, upon reasonable notice,

providing a reasonable level of ease and cost-control in making changes to fields and/or records for individual or system-wide payments and deductions with no significant additional cost to the Employer.

**13.2  Twice Monthly Payment**
The new payroll system will pay individual provider home care workers on a twice-monthly basis. Once the payroll vendor has been chosen by the State, the parties will meet to determine the specific pay dates.

**13.3  Timely and Accurate Payment**
Home care workers shall be entitled to receive timely and accurate payment for services authorized and rendered. To promote a timely and accurate payroll system, the Employer and the Union shall work together to identify causes and solutions to problems resulting in late, lost or inaccurate paychecks and similar issues.

**13.4  Electronic Deposit**
Home care workers shall have the right to authorize electronic deposit of any payment issued to them for services or other reimbursement.

**13.5  Tax Withholding**
The Employer, at its expense, shall withhold from each home care worker's paycheck the appropriate amount of Federal Income Tax, Social Security, Federal and State Unemployment Insurance, Medicare contributions, and any other taxes or public insurance fees required to be deducted by federal or state law.

**13.6  Union Communications**
Provided it can be done within the appropriated budget, the new payroll system will allow for communication of Union materials to bargaining unit members electronically. Possible methods may include a link to a Union website and/or pop-up messages appearing upon log in.

**13.7  Changes to Payroll and Payment Systems**
Unless specifically otherwise noted in this Agreement, the Employer shall bear all costs for any changes to payroll or payment systems required to implement this Agreement, including both the costs of any initial programming changes and the ongoing costs of operating payroll and payment systems.

## ARTICLE 14
## NO DISCRIMINATION

**14.1**  The Union and the Employer are mutually committed to a policy of nondiscrimination. The Employer shall not discriminate with respect to wages, hours, or terms and conditions of employment as provided for in this Agreement on the basis of race, color, physical and/or mental disability, marital status, national origin, ancestry, gender identity, sex, sexual orientation, age, political

belief, faith, veterans status, citizenship status, union membership and activities and in keeping with applicable federal, state or local law.

**14.2**    This Article shall not be construed as otherwise limiting or impeding the statutory right of consumers and prospective consumers to select, hire, supervise the work of, and terminate any home care worker providing services to them as provided pursuant to RCW 74.39A.270(4). Nor shall it be interpreted so as to prevent the referral registry operated by the Employer, its agencies, contractors and subcontractors, from making referrals on the basis of bona fide job-related skills (e.g. language fluency or the physical ability to lift and transfer a consumer) or legitimate consumer preferences such as gender.

## ARTICLE 15
### REFERRAL REGISTRY

**15.1**    **Eligibility for Referral Registry**
Any member of the bargaining unit who is seeking new consumers or additional hours, and who has completed the legally required amount of training or other training as may be determined by the Department of Social and Health Services, and who has successfully cleared a criminal background check, shall be eligible for listing on any referral registry operated by the Employer, its agencies, contractors and/or subcontractors. The Employer retains all rights not otherwise modified herein and shall be the sole determiner of eligibility requirements for all others who participate in the referral registry system.

**15.2**    **Seniority Preference**
Where consumer choice factors are equal, seniority shall prevail in determining the order of referral on any referral registry operated by the Employer.

Due to language requirements and/or consumer preference factors, the registry may bypass a senior home care worker who, by virtue of seniority would be referred to a particular consumer. In such cases, the referral will be given to the most senior available home care worker who can satisfy language requirements and/or the consumer preference. Additionally, in such cases the Employer shall give the bypassed home care worker the next opportunity for referral for additional work, subject to the provisions of this Section.

This Section shall not prevent the Employer from making multiple worker referrals to the same consumer, so long as referrals are made in seniority order.

**15.3**    **Removal from Referral Registry**
Once a worker is listed on the registry, he or she may only be removed from the registry for the following reasons:

A.    Upon his or her request, he or she is removed from the referral registry because he or she is not seeking additional referrals from the registry; or,

B. Upon his or her request, he or she is temporarily removed from active status on the registry because he or she is not seeking additional referrals or more consumer hours on a temporary basis; or

C. He or she worked no hours as an individual provider for twelve (12) or more consecutive months; or,

D. For just cause, including the failure of an individual provider to meet the requirements set forth in RCW 74.39A.250(1) or pursuant to RCW 74.39A.250(2), after he or she commits misfeasance or malfeasance in the performance of duties as an individual provider.

**15.4 Election of Remedies**
Any request for a fair hearing to contest the removal from the referral registry by or on behalf of the individual provider or prospective individual provider as provided under RCW 74.39A.250(2), shall be considered a waiver by the affected individual provider or prospective individual provider of his or her right to file a grievance to contest the removal from the referral registry.

**ARTICLE 16**
**TRAINING**

**16.1 Training Partnership**
Pursuant to RCW 74.39A.009 and 74.39A.360, there shall be established a Training Partnership (or "Partnership"). The Training Partnership will possess the capacity to provide training, peer mentoring, workforce development, and other services to individual providers. The Employer shall become and remain a participating employer in such a Partnership during the complete life of this Agreement, and any extension thereof.

**16.2 Partnership Agreement**
By being a participating employer during the complete life of this Agreement and any extension thereof, the Employer and the Union hereby agree to be bound by the provisions of the Partnership's Operating Agreement, and by all resolutions and rules adopted by the Trustees of the Partnership pursuant to the powers delegated. The Employer accepts the Employer Trustees of the Partnership and their duly elected successors as its representatives on the Board. The Union accepts the Union Trustees of the Partnership and their duly elected successors as its representatives on the Board. The Employer and the Union agree to cooperate with the Trustees of the Partnership in distributing benefit plan information and in obtaining and providing such census and other data as may be required by the Partnership.

**16.3 Coverage**
The Employer agrees to make periodic contributions to the Training Partnership identified in Section 16.1, on behalf of all home care workers covered by this Agreement, in the amount specified in Section 16.4 below.

**16.4    Contributions**

Effective July 1, 2013, the Employer shall contribute to the Partnership thirty-eight cents ($0.38) per Department-paid hour worked by all home care workers covered by this Agreement. Effective July 1, 2014, the Employer shall contribute to the Partnership thirty cents ($0.30) per Department-paid hours worked by all home care workers covered by this Agreement. Department-paid hours shall not include consumer participation hours, training hours, paid time off or vacation.

These contribution levels are sufficient to fully pay for training that is legally required of IPs to maintain qualifications. Any fees or tuition charged to bargaining unit members by the Partnership for attendance at such legally required training shall be reported to the Employer on a monthly basis. The State's contribution amount under this Section will be reduced by the total of any such fees or tuition charged to bargaining unit members.

No more than two hundred fifty thousand dollars ($250,000.00) per fiscal year from these funds shall be used to provide optional mentorship or advanced training during the life of this Agreement. The Partnership may provide additional optional mentorship or advanced training hours using a fee and tuition schedule of its choice. Tuition and fees for optional training will not reduce the Employer's contribution.

These contribution amounts comprise the following components:

A.    Basic Training and Continuing Education

Effective July 1, 2013, the basic training and continuing education component of the contribution, intended to cover all legally required training necessary for IPs to remain qualified to work, shall be twenty-seven cents ($0.27) per Department-paid hour. Effective July 1, 2014 the basic training and continuing education component shall be twenty-five cents ($0.25) per Department-paid hour.

B.    Add-ons for system improvements for Basic Training and Continuing Education

Effective July 1, 2013 eight cents ($0.08) of the Employer's total contribution is intended to be used for system improvements for the purpose of increasing the number of certified IPs, including access to language-appropriate training for limited English speaking workers to improve their success in certification testing. Effective July 1, 2014, this add-on component of the Employer's total contribution shall be two cents ($0.02).

C.    Certification and Testing Fees Assistance Benefit

The parties agree there shall be established a certification benefit, administered by the Partnership, for the exclusive purpose of defraying the

initial costs of certification and testing fees required by the Department of Health (DOH) or their testing agent for the bargaining unit members to remain qualified as individual providers. Effective July 1, 2013, three cents ($0.03) of the Employer's contribution to the Partnership shall be used for this benefit. The Employer agrees to continue contributions for this benefit provided that the Employer is provided with verifiable reports on a quarterly basis, in a format acceptable to the Employer, which verifies the contribution has been used for the designated purposes.

If the State is unsuccessful in receiving approval from the Center for Medicare and Medicaid Services (CMS) for the above payment method, the parties shall meet to bargain over the amount and an alternative method of payment. Additionally, in the event any other significant change in legal training requirements occurs, the parties agree to bargain over the effects of changes.

Contributions required by this Section shall be paid to the Partnership on the pay dates(s) determined by the parties following the State's selection of a payroll vendor in accordance with Article 13, but in any case no later than the twenty-fifth (25th) day of the month following the month for which service hours are paid. Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Partnership or its designee.

### 16.5    Minimum Basic Training Requirements
All legally required basic training for individual providers shall be provided through the Partnership. Upon completion of the required basic training requirements, or upon termination, individual providers shall be compensated at their regular rate of pay for all hours spent in legally-required basic training.

The parties intend that all orientation and safety training occur as soon as practically possible, so as to prevent the creation of any barriers to the timely provision of Medicaid benefits to consumers.

### 16.6    Minimum Continuing Education Training Requirements
Each individual provider shall complete all legally required continuing education training through the Partnership as required by RCW 74.39A.341. The purpose of continuing education is to improve and enhance the knowledge and skills of individual providers relative to the care needs of their consumer(s). Completion of all continuing education hours is a prerequisite for maintaining eligibility to work as an individual provider. Upon completion of required continuing education training, or upon termination, individual providers shall be compensated at their regular rate of pay for all hours spent in legally-required continuing education training.

### 16.7    Exemptions from Minimum Training Requirements
All existing exemptions from minimum training requirements under law shall continue to apply to training for individual providers. The Partnership shall

recognize all exemptions from required basic training for individual providers required by law.

**16.8  Minimum Training Requirements for Exempted Individual Providers**

All individual providers currently exempted from the existing full training requirements shall continue to be required to complete their current specified requirements under law.

The Partnership shall recognize all minimum training requirements for any individual providers exempted from required basic training required by law.

Any individual provider who is exempted from basic training requirements, or any portion thereof, may voluntarily enroll, at his or her own expense, in any training offered by the Partnership for which that individual provider is otherwise eligible.

**16.9  Mentoring**

Pursuant to RCW 74.39A.330, the Training Partnership shall offer a peer mentoring program to all new individual providers. The purpose of the mentoring program is to provide general information about serving as an individual provider and to assist the mentee in problem solving around work related challenges faced by individual providers. Mentors will not infringe on the rights of the consumer to select, hire, fire or instruct the mentee in the performance of the individual provider's duties or with the case manager's exercise of his or her responsibilities. Mentors shall not discuss confidential information about the consumer who employs a mentee without a written release of information from that consumer. The Employer shall not be responsible for employing, paying, tracking or verifying hours of mentor work. Time worked as a mentor will not count toward cumulative care hours.

To be mentors, individual providers must have completed all applicable required training appropriate to their date of hire, plus peer mentorship training. Prior to appointment, mentors must meet the same qualifications as an individual provider and must meet all other qualifications set forth by the Partnership.

**16.10  Advanced Training**

Pursuant to RCW 74.39A.350, the Partnership shall offer advanced training for individual providers. The State, the Union and the Partnership shall cooperate to develop advanced training curricula that support the objectives of the state's health home initiatives, which are targeted to high cost/high risk clients.

**16.11  Training Curriculum and Instructors**

The Employer shall be responsible for setting standards for training instructors and approving curriculum to the extent required by law.

**16.12  Training Provisions, Tracking and Reporting**
The parties agree that it is their intention that the Partnership will be capable of the following:

1.  Providing all types of training required by law and that meets training standards set in administrative rule.

2.  Providing all types of curricula and methods of delivery authorized in rule by the Employer.

3.  Registering all individual providers eligible for training.

4.  Alerting individual providers and the Employer within a reasonable timeframe of impending training completion deadlines.

5.  Maintaining evidence of appropriate current professional licenses for all training instructors, when applicable.

6.  Providing fully supplied clinical settings and ADA compliant facilities for training.

7.  Evaluating knowledge and skills competency prior to the administration of the certification examination.

8.  Issuing state-provided Certifications of Completion to those individual providers that successfully complete their course work.

9.  Providing the Employer with reports on student course evaluations at least quarterly.

10. Maintaining training records for a reasonable amount of time and making such records available to individual providers upon request.

11. Tracking the training status of all individual providers and providing the Employer with all such reasonable training-related data as may be necessary for administration and enforcement.

**16.13  Access to Training**
    A.    <u>Union Presentation Compensation</u>
        The Employer agrees to compensate up to thirty (30) minutes of time for a presentation on Union issues to all individual providers receiving the Union portion of required basic training. The Employer agrees to compensate up to fifteen (15) minutes of time annually for a presentation on Union issues to all individual providers receiving the Union portion of required continuing education. Any additional time for a presentation on Union issues agreed upon between the Union and the Partnership shall not be paid by the Employer.

B.    <u>Employer Access to Training</u>
The Partnership shall provide all statewide training schedules for all basic training, advanced training and continuing education courses, including dates, locations, times, seating capacity and the primary language in which the class will be taught, to facilitate the Employer's observation of training courses. The schedules shall be provided within two (2) weeks after the training is first scheduled or when changes occur, and shall be provided in an electronic format to the designated Employer contact person for training.

## 16.14  Indemnify and Hold Harmless

The Partnership shall indemnify and hold harmless from liability the Employer from any claims by beneficiaries, training providers, vendors, or home care workers covered under this Agreement.

## ARTICLE 17
## UNION-MANAGEMENT COMMUNICATIONS COMMITTEE

### 17.1  Purpose

The Employer and the Union agree to engage in discussions on topics of mutual interest, including but not limited to: implementation of this Agreement; new initiatives, rules or policies proposed by the Union, by the Employer, or by the Department; and implementation of the provisions of Article 20.6 of the Agreement.

### 17.2  Meetings

The parties shall meet at least quarterly unless otherwise mutually agreed. Meetings should be held at mutually convenient times and ADA accessible locations. The parties are encouraged to select participants for these discussions who are representative of the issues to be discussed and who bring to the discussion the authority to make decisions on behalf of the parties. The Union-Management Communications Committee (UMCC) shall consist of up to five (5) representatives of the Union and up to five (5) representatives of the Employer. Home care workers serving as representatives of the Union as described above shall receive a stipend from the appropriate agency for their time spent in UMCC meetings. The parties will be solely responsible for determining dispensations, if any, of other expenses of their respective representatives and/or resource persons as attendees.

## ARTICLE 18
## DUTY TO BARGAIN

Nothing contained in this Agreement shall be construed as to diminish the obligation of the parties to discuss and/or negotiate over those subjects appropriate under the law and to the extent that the Employer and/or its agencies, contractors or subcontractors, has

lawful control over those subjects. This specifically includes the wages, benefits, hours and terms and conditions of employment of members of the bargaining unit.

## ARTICLE 19
## CONSUMER RIGHTS

**19.1 Information Regarding Consumers**

This Agreement shall not be interpreted as to require the Employer to release confidential personal information regarding any consumer of in-home care services to the Union without the written permission of any such consumer. Personal information includes, but is not limited to: names, addresses, telephone numbers, email addresses, any identification numbers including social security numbers or any other personal information regarding consumers.

**19.2 Consumer Confidentiality**

Union representatives and individual providers shall maintain strict standards of confidentiality regarding consumers and shall not disclose personal information pertaining to consumers obtained from any source unless the disclosure is with the express written consent of the consumer or compelled by legal processes or otherwise required by law.

**19.3 Non-Waiver**

The above enumerations of consumers' rights are not inclusive and do not exclude other rights not specified, including those rights and authority provided under the law. The exercise or non-exercise of rights retained by the consumer shall not be construed to mean that any right of the consumer is waived; including, but not limited to the statutory right of consumers and prospective consumers to select, hire, supervise the work of, and terminate any home care worker.

**19.4 Consumers Not Subject to Grievance Procedure**

No action taken by the consumer with respect to this Article or any consumer rights shall be subject to the grievance and arbitration procedures provided for in this Agreement.

## ARTICLE 20
## POLICIES AND PRACTICES

**20.1 Medicaid Integration Projects**

Workers performing services as individual provider home care workers under Washington Medicaid Integration Projects (WMIP), Medicare Integrated Care Projects (MICP), state programs to integrate care for dually eligible individuals, HealthPathWashington, or similar programs and entities shall be members of the bargaining unit and this Agreement shall be in full force and effect with respect to such home care workers for all covered hours of work for such workers for the services described in RCW 74.39A.240.

**20.2 Hours Cuts**

Whenever the consumer suffers a reduction in hours or seeks an increase in hours, the Employer will make a reasonable effort to consult with the consumer's individual provider prior to making a final determination.

**20.3 Cash and Counseling**

In the event that the Employer implements or expands any "Cash and Counseling," New Freedom or similar program, or self-directed or individual budget home care options or similar program, workers employed by consumers under such program(s) shall be members of the bargaining unit and this Agreement shall be in full force and effect with respect to all covered hours of work for such workers described in RCW 74.39A.240.

**20.4 Provider Reclassification**

The Employer shall not reclassify or cause to be reclassified any individual provider home care worker unless requested by the individual provider with notice to the Union.

**20.5 Exclusion**

In no event shall any task, type of work or hours of work that are not typically authorized as personal care under the Employer's Medicaid personal care, community options program entry system, chore services program, or respite care program, or respite care or residential services and support to persons with developmental disabilities under RCW 71A.12 or respite care as defined in RCW 74.13.270, or that would otherwise constitute covered services under Section 20.1 above, be considered covered work or covered hours of work under this Agreement, and this Agreement shall not be in force and effect with respect to such work or hours of work.

**20.6 Delivery of Quality Home Care Services**

The Employer and the Union agree that they have a mutual interest in promoting and ensuring quality in the home care sector. Changes to the existing system needed to realize this quality may include, but are not limited to: care integration across programs and settings, the provision of holistic care, the improvement of services for consumers with complex needs, and the development of metrics needed to measure improvements in health and other defined outcomes. The parties agree to communicate openly with each other about ideas that would improve the quality of services to consumers. The Union Management Communications Committee may be a forum for these discussions.

**20.7 Changes to the Health Care Delivery System**

The parties recognize that during the life of this Agreement important changes will likely occur in the delivery of long term care, respite care and services and supports to persons with developmental disabilities, including those changes mandated by the Affordable Care Act. The Employer agrees to provide timely, written notice to the Union of any State Medicaid Plan and Medicaid Home and Community Based Care Waiver Amendments impacting services covered by this

Agreement as well as any changes to the delivery of services covered by this Agreement, and to fulfill its collective bargaining obligation regarding mandatory subjects of bargaining.

## ARTICLE 21
## HOURS OF WORK

**21.1    Hours of Work when Consumers have Complex Behavioral and Cognitive Issues**
Effective September 1, 2007, the Employer shall increase the hours of work for individual providers working for consumers with complex behavioral and cognitive issues by:

A.    Introducing a "behavior score" to CARE that will add authorized hours based upon the frequency and severity of problem behaviors. Each of the behaviors measured in CARE will be weighted based on severity and frequency of occurrence and the result will be a "behavior score" between one (1) and four (4) that will be added to the considerations that determine the authorization of hours by the CARE tool.

B.    Establishing two (2) new classification categories in CARE for extremely high Activities of Daily Living CARE tool scores. These new classifications would involve clinically complex care giving and/or care giving involving moderate to severe cognitive impairments. When consumers qualify for more than one classification category they will be placed in the category with the highest base hours.

## ARTICLE 22
## RETIREMENT BENEFITS

**22.1    Intent**
It is the intent of the parties to develop a new model of retirement benefits that provides retirement security for home care workers and that manages risk for the Employer and union members. Features of this model shall include secure retirement income for home care workers, mandatory employer and voluntary worker contributions, portability, lifetime retirement benefits, prudent asset investment management, cost-effectiveness, joint governance, and effective communication and education. The parties commit to work jointly to develop this model.

**22.2    Development of a Retirement Benefit Trust**
At such time that the parties have negotiated an Employer contribution towards a retirement benefit, the parties shall join a multi-employer Taft-Hartley trust for the purpose of providing retirement benefits to unionized home care workers in Washington State. The Employer agrees to become and remain a participating member of the trust.

**22.3 Development Funding**

The Union shall, through its national benefits staff, arrange for research and staff support to the parties to support the joint effort of the parties to develop this new model of retirement benefits.

## ARTICLE 23
## UNINTERRUPTED IN-HOME CARE SERVICES

23.1   Neither the Union, the individual provider home care workers or their agents shall, directly or indirectly, authorize, assist, encourage and/or participate in any way in any illegal strike activity, walkouts, slowdowns, sickouts or other similar interference with services to consumers provided by individual providers. The Union, individual provider home care workers and their agents shall not, for purposes of enforcing this Agreement, conduct picketing against the Employer and any or all branches and departments of Washington State government, the State of Washington, its agents and/or its representatives. The Union, individual provider home care workers and their agents shall not picket for any reason against consumers in locations where individual providers perform services. In the event that the Employer believes that any such activity is imminent or is occurring, the Employer's representative shall contact the President or Secretary-Treasurer of the Union prior to taking any personnel or legal action in order to afford the Union the opportunity to inform its members of this contract provision and the law.

23.2   In recognition of consumers' right to select, hire, supervise the work of, and terminate any individual provider providing services to them, the parties agree that the Employer does not have the authority to lock out the Union or the individual providers.

## ARTICLE 24
## SAVINGS OR SEPARABILITY CLAUSE

24.1   This Agreement shall be subject to all present and future applicable federal, state and local laws and rules and regulations of governmental authority. Should any provision of this Agreement, or the application of such provision to any person or circumstance be invalidated or ruled contrary to law by Federal or State court, or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

24.2   In the event of such invalidation, the parties shall promptly meet to negotiate a substitute provision. Any changes or amendments to this Agreement shall be in writing and duly executed by the parties and their representatives.

## ARTICLE 25
## COMPLETE AGREEMENT

**25.1**  The parties hereto acknowledge that during the negotiations which resulted in this Agreement, each party had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are fully set forth in this Agreement. It is further understood that this Agreement fully and completely sets forth all understandings and obligations between the parties, constitutes the entire Agreement between the parties, and both parties in their own behalf and on behalf of their respective members waive any and all claims or demands they have made or could have made for any acts or omissions by either party or their respective members, agents, employees or assigns.

**25.2**  The Agreement expressed herein in writing constitutes the entire Agreement between the parties and no oral or written statement shall add to or supersede any of its provisions unless mutually agreed to by the parties and as otherwise provided for in this Agreement.

## ARTICLE 26
## TERM OF THE AGREEMENT

**26.1**  **Effective Dates**

Except for those provisions requiring a legislative appropriation of funds, this Agreement shall go into full effect July 1, 2013, and shall continue in full effect, unless amended by mutual written agreement of the parties, through June 30, 2015. Those provisions requiring a legislative appropriation shall go into full effect on July 1, 2013 or as otherwise provided for in this Agreement, if approved.

**26.2**  **Successor Negotiations**

The parties shall begin negotiations for a successor agreement no later than April 1, 2014. If no successor agreement has been reached, or if the legislature has not approved appropriations required to fund the economic provisions of a successor agreement as of June 30, 2015, all the terms of this Agreement shall remain in effect until the effective date of a subsequent agreement, not to exceed one (1) year from the expiration date of this Agreement.

## APPENDIX A
## WAGE SCALES

| Cumulative Career Hours | Home Care Aide (Without Certification) Article 9.1 | Certified Home Care Aide OR Certified Nurse Assistant License Article 9.2 | Certified Home Care Aide WITH Completed Advanced Training Article 9.2 |
|---|---|---|---|
| 0-2000 | $10.53 | $10.78 | $11.03 |
| 2001-4000 | $10.68 | $10.93 | $11.18 |
| 4001-6000 | $10.85 | $11.10 | $11.35 |
| 6001-8000 | $10.98 | $11.23 | $11.48 |
| 8001-10000 | $11.14 | $11.39 | $11.64 |
| 10001-12000 | $11.30 | $11.55 | $11.80 |
| 12001-14000 | $11.46 | $11.71 | $11.96 |
| 14001 plus hours | $13.84 | $14.09 | $14.34 |

Note: Wages shall be adjusted upwards by one dollar ($1.00) an hour for individual providers who perform duties as mentors, preceptors, or trainers as assigned by the Training Partnership. Time worked as a mentor will not count toward cumulative care hours.

| Cumulative Career Hours | Home Care Aide (Without Certification) Article 9.1 | Certified Home Care Aide OR Certified Nurse Assistant License Article 9.2 | Certified Home Care Aide WITH Completed Advanced Training Article 9.2 |
|---|---|---|---|
| 0-2000 | $11.06 | $11.31 | $11.56 |
| 2001-4000 | $11.21 | $11.46 | $11.71 |
| 4001-6000 | $11.39 | $11.64 | $11.89 |
| 6001-8000 | $11.53 | $11.78 | $12.03 |
| 8001-10000 | $11.70 | $11.95 | $12.20 |
| 10001-12000 | $11.86 | $12.11 | $12.36 |
| 12001-14000 | $12.03 | $12.28 | $12.53 |
| 14001 plus hours | $14.53 | $14.78 | $15.03 |

Note: Wages shall be adjusted upwards by one dollar ($1.00) an hour for individual providers who perform duties as mentors, preceptors, or trainers as assigned by the Training Partnership. Time worked as a mentor will not count toward cumulative care hours.

For purposes of this Agreement, the following definitions shall apply. This is not a complete list of all terms found in this Agreement.

Individual provider (also referred to as home care worker or caregiver): a person, including a personal aide, who has contracted with the Department to provide personal care or respite care services to functionally disabled persons under the Medicaid personal care, community options program entry system, chore services program, or respite care program, or to provide respite care or residential services and support to persons with developmental disabilities under chapter 71A.12 RCW, or to provide respite care as defined in RCW 74.13.270 and who solely for the purpose of collective bargaining is employed by the Employer as provided in RCW 74.39A.270.

Consumer: a person to whom an individual provider provides any such services.

SEIU Healthcare 775NW (also referred to as Union): sole and exclusive bargaining representative for the statewide bargaining unit of individual providers as defined in RCW 74.39A.270. www.seiu775.org.

Department (also referred to as Payor): the Washington State Department of Social and Health Services (DSHS). www.dshs.wa.gov.

Advocate: an individual provider covered by the Collective Bargaining Agreement authorized in writing by SEIU Healthcare 775NW to engage in representational activities.

Worker Representative: an individual provider covered by the Collective Bargaining Agreement who may perform a variety of duties as defined by the Union.

Union Representative: an authorized bargaining representative employed by SEIU Healthcare 775NW.

Registry: a referral registry of individual providers and prospective individual providers established in order to provide assistance to consumers and prospective consumers in finding individual providers and prospective individual providers. .

ADA: the Americans with Disabilities Act. Used in this Agreement, it means buildings or locations that are accessible to persons with disabilities or compliant with local laws which define accessibility.

PERC:  the Public Employment Relations Commission.  A neutral state agency that is charged with the administration of state collective bargaining laws to ensure the public of quality public services.  www.perc.wa.gov.

RCW:  the Revised Code of Washington.  All of the state laws have numbers which start with RCW. You can find the RCWs referred to in this Agreement at the legislature's web site, www.leg.wa.gov/legislature.

THE PARTIES, BY THEIR SIGNATURES BELOW, ACCEPT AND AGREE TO THE TERMS AND CONDITIONS OF THIS COLLECTIVE BARGAINING AGREEMENT.

Executed this ___1___ day of ___July___, 2013.

For the Service Employees International Union Healthcare 775NW:

David Rolf
President

Executed this ___1st___ day of July, 2013.

For the State of Washington:

Jay Inslee
Governor

Diane Lutz, Chief Negotiator
OFM/Labor Relations Division