UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA CENTENO et al.,<br><br>           Plaintiffs,<br><br>     v.<br><br>JAY INSLEE, in his capacity as the Governor of the State of Washington, et al.,<br><br>           Defendants. | CASE NO. C14-200 MJP<br><br>ORDER ON RENEWED MOTION FOR CLASS CERTIFICATION, MOTION TO STAY |

THIS MATTER comes before the Court on Plaintifffs' Renewed Motion for Class Certification (Dkt. No.120) and Defendants' Joint Motion to Vacate Dispositive Motion and Trial Dates (Dkt. No. 133). Having considered the Motions, the Responses (Dkt. Nos. 138, 145, 137), the Replies (Dkt. Nos. 152, 150), and all related papers, the Court hereby DENIES the renewed certification motion and GRANTS Defendants' motion to stay the case until the Supreme Court resolves Friedrichs v. California Teachers Assocation. See 135 S.Ct. 2933 (June 30, 2015). The Parties are further ORDERED to file a Joint Status Report proposing new

dispositive motions deadlines and trial dates within thirty (30) days of the Supreme Court's decision.

## Background

This case comes in the wake of the Supreme Court's decision in Harris v. Quinn, in which the Supreme Court held with respect to Illinois personal care assistants that are deemed employees solely for the purpose of collective bargaining that the imposition of involuntary "agency fee" payments to unions in lieu of equivalent union membership dues is a violation of the First Amendment. Harris v. Quinn, 134 S.Ct. 2618, 2639 (2014). Prior to Harris, the State of Washington had an agency fee system for home health care providers (known as "Individual Providers") arguably like the one struck down in Harris. (See First Glickman Decl., Dkt. No. 85 at 2–5.) In response to the Harris ruling, however, the State has changed its practice and imposed an opt-out system for union membership and/or dues deduction. (See id.) The named Plaintiffs (currently Mary Hoffman, Susan Routh, Linda Eby, and Mary Jane Aurdal Olson) are "Individual Providers" in Washington who care for disabled relatives and do not wish to join the Union or have dues deducted from their paychecks. (Third Am. Compl. ["TAC"], Dkt. No. 68 at 1–2, 4; Stipulated Dismissal of Plaintiffs Centeno and Wilen; Dkt. No. Eby Decl., Dkt. No. 70 at 2; Hoffman Decl., Dkt. No. 71 at 2; Olson Decl., Dkt. No. 72 at 2; Routh Decl., Dkt. No. 73 at 2–3.)

The Court previously denied a motion for certification of a Federal Rule of Civil Procedure 23(b)(3) class made up of "[a]ll Individual Providers who, at any point from February 2011 to the present, were subjected to [the] compulsory deductions without their explicit consent." (Dkt. No. 116.)

In this renewed Motion, Plaintiffs seek to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) made up of "All Individual Providers who: (1) provided written notification to SEIU Local 775NW ("SEIU") or the State of Washington that they objected to paying dues or fees to

SEIU; and (2) at any time from February 2011 to the present were subjected to automatic deductions of union dues or agency fees without their recorded, affirmative consent to those deductions." (Dkt. No. 120 at 3.)

In addition to opposing certification of the class, Defendants also argue the Court should stay the case following the order on class certification in light of the Supreme Court's grant of certiorari in Friedrichs v. California Teachers Association. (Dkt. No. 133.)

**Discussion**

I.   Legal Standard for Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550 (2011) (citation and internal quotation marks omitted). To qualify for this exception to the general rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the absent class members. Id. Class certification is proper if and only if "the trial court is satisfied, after a rigorous analysis," that Plaintiffs have met their burden under Rule 23. Id. at 2551.

Proponents of class certification must demonstrate, first, that:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity"),
(2) there are questions of law or fact common to the class ("commonality"),
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and
(4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

See Fed. R. Civ. P. 23(a).

Next, proponents of certification must demonstrate that they meet the requirements of at least one of the class types described by Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions

affecting only individual members" ("predominance") and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). The Rule notes that matters relevant to predominance and superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In support of the idea that one can bring a second class certification motion, Plaintiffs point to Rule 23's statement that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Courts have interpreted this rule to permit renewed motions for class certification offering narrowed class definitions. See, e.g., Hartman v. United Bank Card, Inc., 291 F.R.D. 591, 597 (W.D. Wash. 2013).

II.   Class Actions and the First Amendment

One recurring issue that the Parties struggle with in this briefing is whether a court must accept the plaintiff's theory of liability at the class certification stage, and what accepting Plaintiffs' theory of liability would mean in this context. (For example, might absent class members' motivations for opting out of agency fee deductions affect their entitlement to damages and thus the appropriateness of their inclusion in the class?) Plaintiffs' position is in some tension with the fact that the Supreme Court has repeatedly and recently cautioned that the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-mart Stores, 131 S.Ct. at 2552.

The First Amendment itself presents special problems in the 23(b)(3) class certification context. Here, Plaintiffs insist that if they prove that the First Amendment requires an opt-in as

opposed to opt-out regime for agency fees collected from the individual providers, then any fees collected without this requirement in place were "unlawful" and must be "refunded." (See Dkt. No. 120 at 7.) But even if the Court provisionally accepts Plaintiffs' theory that the First Amendment mandates opt-in union dues, this premise does not necessarily lead to the conclusion that any provider who had dues deducted without this safeguard suffered a First Amendment injury. The First Amendment frequently mandates overinclusive, prophylactic rules that extend further than the core speech sought to be protected. See David A. Strauss, The Ubiquity of Prophylactic Rules, 55 U. Chi. L. Rev. 190, 198 (1988) ("Not just arguably peripheral doctrines [ . . . ] but the most significant aspects of [F]irst [A]mendment law can be seen as judge-made prophylactic rules that exceed the requirements of the 'real' [F]irst [A]mendment."); see also Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415, 433 (1963) ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."). Here, the Constitution might require an opt-in regime to protect the speech of providers who subjectively "do not wish to join or support" the union, see Harris, 134 S.Ct. at 2644, while incidentally guarding the wallets of those who harbor no such reservations.

### III. Rule 23(a) Prerequisites

#### a. Numerosity

As the Court observed in the first order on class certification, courts have generally approved of classes consisting of more than one hundred members. (Dkt. No. 116 at 4.) See Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Labor v. INS, 306 F.3d 842, 869 (9th Cir. 2002). If religious objectors are excluded, as Plaintiffs request in a footnote in their reply brief (Dkt. No. 152 at 13 n.11), the estimated size of the class according to the Union's numbers is approximately 1,143 members, though some of the putative class members identified

by the Union may have signed membership cards prior to the class period and thus Plaintiffs consider them outside the class by virtue of this "recorded, affirmative consent." (See Dkt. No. 120 at 6; Dkt. No. 139 at 2; Dkt. No. 141 at 1; Dkt. No. 142 at 1; Dkt. No. 152 at 5 n.5.) Plaintiffs have met their burden to show numerosity.

        b. Commonality

As the Court also observed in the original order on class certification, there is at least one common issue of law and fact that will be "central to the validity" of each class member's claims: whether the opt-out procedure for dues deductions adopted by Defendants comports with the First Amendment. (Dkt. No. 116 at 5, citing Wal-mart Stores, 131 S.Ct. at 2551.) Commonality does require Plaintiffs to demonstrate that "the class members 'have suffered the same injury,'" Wal-mart Stores, 131 S.Ct. at 2551, a potentially problematic issue in light of the First Amendment complexity in this case (see above). But since the same issue is also presented with respect to typicality, the Court will assume that this question satisfies the second 23(a) requirement.

        c. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover North Am. LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).

The conduct at issue here was not unique to the named Plaintiffs, but was a result of consistent policies applied by the State and the Union both before and after the decision in Harris v. Quinn. However, whether all the "other class members have been injured by the same course of conduct" and whether "other members have the same or similar injury" are open questions.

In response to the Union's arguments about religious objectors (Dkt. No. 138 at 21–22), Plaintiffs concede the twenty-four religious objectors who would otherwise qualify under the proposed class definition should be excluded from the class because their dues were not directed to the Union. (Dkt. No. 152 at 13 n.1.) This concession makes sense because the central First Amendment injury identified in Harris occurs when a person is required to "subsidize speech by a third party that he or she does not wish to support," Harris, 134 S.Ct. at 2644, and because religious objectors have their dues redirected to the charity of their choice, they do not suffer that same injury. (See Order on Class Cert., Dkt. No. 116 at 6–7.)

Plaintiffs nonetheless contend as a general matter that "Class Representatives and the other class members suffered the same constitutional injury," which they identify as "the automatic deduction of dues/agency fees without their affirmative consent and without due process of law." (Dkt. No. 120 at 8.) But by making the religious objector concession, they have implicitly acknowledged that the deduction alone does not cause this injury; rather, the second step, in which the dues are directed to a third party that the person does not wish to support, is equally important.

Although the Court is satisfied that the named Plaintiffs "do not wish to join or support" the Union and thus have a colorable claim for a First Amendment injury when their agency fees were deducted and sent to the Union, Plaintiffs have not met their burden to show that the remainder of the class similarly "d[id] not wish to join or support" the Union during the class period. For example, the Union cites one opt-out request from an Individual Provider who wrote, "While I appreciate the hard work of the union, I only work part time and my wages are too heavily garnished for union dues." (Dkt. No. 139 at 11.) Plaintiffs have not shown that this Individual Provider does not "support" the Union in the sense that she does not endorse the

1  Union's speech and/or actions on her behalf; Plaintiffs also put forward no evidence she did not
2  wish to "join" the Union in the period when her dues were being deducted prior to Harris.
3  Plaintiffs simply assume someone who wants to give money to the Union "support[s]" the
4  Union, in the terminology of Harris, while someone who does not want to give money to the
5  Union "do[es] not . . . support" the Union. But even though money can be a form of "support"
6  and indeed, a form of speech under the First Amendment, it is not clear that withdrawal of
7  money necessarily means withdrawal of support such that prior monetary contributions must be
8  interpreted as First Amendment injuries.

9        Plaintiffs protest that "[t]here is no qualification regarding the reason for an individual's
10 lack of desire to join or support the union" and argue that "Defendants themselves demonstrate
11 that there is no such qualification" because they allow Individual Providers to opt out "regardless
12 of the nature of their 'objection' to paying those dues." (Dkt. No. 152 at 4 & n.3.) The Court sees
13 no inconsistency in Defendants' arguments. Respect for First Amendment rights may lead to the
14 adoption of broad rules that protect both core First Amendment speech and purely financial
15 conduct. (See Section II, above.) But the typicality requirement of Rule 23(a) is concerned with
16 the similarity of past injuries, rather than solely prospective rules to prevent future injury.

17       Separately, Defendants point to the Union's position that the named Plaintiffs, who care
18 for relatives who are unable to supervise Plaintiffs' care, are subject to a unique defense because
19 they are allegedly full-fledged employees whereas much of the rest of the class are quasi-public
20 employees. (Dkt. No. 145 at 11–13; Dkt. No. 138 at 19 n.6; Dkt. No. 84 at 17–18.) See Hanon v.
21 Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) ("[A] named plaintiff's motion for class
22 certification should not be granted if there is a danger that absent class members will suffer if
23 their representative is preoccupied with defenses unique to it.") (quotation marks and citation
24

omitted). As the Court previously noted, the Union's argument faces an uphill battle in light of the Washington Supreme Court's decision with regard to similarly situated plaintiffs in Rekhter v. State of Washington, 180 Wn.2d 102, 123–24 (2014). Defendants cannot defeat class certification on the basis that the named Plaintiffs would be unduly preoccupied with this defense, but there are other barriers to typicality, as discussed above.

        d.  Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). To determine whether the adequacy prong is satisfied, courts consider two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). In the prior Order on class certification (where the broader proposed class excluded only Individual Providers who had given "express consent" to the deductions), the Court held that the adequacy requirement was not fulfilled where the class likely included many "Individual Providers who willingly pay Union dues and believe others should not be permitted to free ride on their contributions." (Dkt. No. 116 at 9.) Plaintiffs argue any class conflict has been cured by confining the class to those who are on record opting out of dues deductions. (Dkt. No. 120 at 9.) The Union counters the conflict persists because a majority of the proposed class signed a Union card at some point and/or voted in favor of a CBA that authorized the dues deductions.

The narrowing of the class has alleviated some of the class conflict identified in the previous Order. However, a number of members of the new proposed class, including 15 current Union

members who signed a membership card <u>after</u> opting out, may still fundamentally disagree with Plaintiffs' contentions regarding the subject matter being litigated. (<u>See</u> Dkt. No. 139 at 3; <u>see also</u> First Order on Class Cert., Dkt. No. 116 at 7–8, citing, <u>e.g.</u>, <u>Mayfield v. Dalton</u>, 109 F.3d 1423, 1427 (9th Cir. 1997) (plaintiff military personnel challenging constitutionality of a DNA repository were not adequate representatives of class members who approved of the repository); <u>Peterson v. Oklahoma City Hous. Auth.</u>, 545 F.2d 1270, 1273 (10th Cir. 1976) (plaintiffs challenging security deposit in public housing could not adequately represent class members who thought security deposit beneficial); <u>Dierks v. Thompson</u>, 414 F.2d 453, 456 (1st Cir. 1969) (disagreement on appropriate investment strategy for pension plan precluded class certification); <u>Hansberry v. Lee</u>, 311 U.S. 32, 44–45 (1940) (plaintiffs seeking to enforce a covenant could not represent class members that do not want it enforced).)

Plaintiffs argue anyone who opted out by definition supports at least the post-<u>Harris</u> opt-out system (Dkt. No. 152 at 6–7), but even if that is true, that does not mean they necessarily are in favor of the opt-in system that is simultaneously being sought in this lawsuit.

Plaintiffs next argue that "support" for an allegedly unconstitutional rule may not be considered in the adequacy prong, relying heavily on <u>Hamidi v. Serv. Emps. Int'l Union Local 1000</u>, No. 2:14–319 WBS KJN, 2015 WL 2455600, at *6 (E.D. Cal. May 22, 2015) ("[T]he Ninth Circuit has rejected this kind of argument against class actions."), and <u>Probe v. State Teachers' Ret. Sys.</u>, 780 F.2d 776, 779–81 (9th Cir. 1986) ("[I]f the state plan is found to violate Title VII, it will be invalidated notwithstanding the fact that there may be some who would prefer that it remain in operation."). However, in a 1997 constitutional challenge that more closely mirrors the consent-type issues in this case, the Ninth Circuit held that service members who disapproved of a Department of Defense policy of collecting service members' DNA without their consent could not adequately represent others who approved of the policy.

Mayfield v. Dalton, 109 F.3d at 1427. The Ninth Circuit explained that "[t]his is not a case where some class members might prefer to leave violation of their rights unremedied," presumably because those who did not oppose the policy also did not object to having DNA samples taken. A similar situation arises among class members who approve of the opt-out system here after having taken the opportunity to opt out: support for the opt-out system may reflect pre-opt-out consent and thus an absence of First Amendment injury during both during the mandatory regime and the opt-out regime prior to the opt-out request. (See, e.g., Dkt. Nos. 143, 144.)

In its first Order on class certification, the Court relied in part on the Sixth Circuit's discussion of class conflicts in a factually similar case. See Schlaud v. Snyder (Schlaud II), No. 12–1105, 2015 WL 2190942, *5–*6 (6th Cir. May 15, 2015). The Sixth Circuit reasoned that many members of the proposed class had voted for collective bargaining agreements that authorized the deductions. Id. In a footnote in their reply brief, Plaintiffs offer to eliminate from the class any Individual Provider who voted in the 2011 or 2013 elections (Dkt. No. 152 at 5 n.4), but they simultaneously insist that "Plaintiffs do not believe that [voting for a CBA authorizing dues deduction] is the sort of affirmative recorded consent that the First Amendment requires." (Dkt. No. 152 at 7, 5 n.4.) Defendants have not had an opportunity to respond to this refashioned proposed class. But even if this narrower class solves adequacy problems among the bulk of the proposed class, Plaintiffs still face obstacles on other requirements for class certification.

IV.     23(b)(3) Requirements

a.   Predominance

The predominance inquiry for Rule 23(b)(3) damages classes begins with analyzing whether the elements of the cause of action will be analyzed in the same way for each class member. See Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011). It is

meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623.

The Union first argues that First Amendment injuries arise in the public sector union context only where agency fees are used "to fund union activities that the contributors have a First Amendment objection to supporting," citing Grunwald v. San Bernandino City Unified Sch. Dist., 994 F.2d 1370, 1375 (9th Cir. 1993). (Dkt. No. 138 at 9–10.) But such distinctions, made in pre-Harris cases dealing with full-fledged public employees' Hudson-based rights not to contribute to a union's "ideological" or political activities (as opposed to collective bargaining), are not relevant here. See Grunwald, 994 F.2d at 1373. Nonetheless, the Court agrees that a class member suffered a First Amendment injury only if he or she did not wish to "join or support" the Union at the time his or her dues were directed to the Union, as described in Section II and III(c), above.

Determining whether an Individual Provider had a subjective stance of not wishing to join or support the Union at the time of a deduction is not conclusively determined by asking whether the Individual Provider had signed a union card prior to the deduction or voted in the collective bargaining agreement elections. Even if the First Amendment requires the imposition of an opt-in system for dues deduction, as discussed in Section II, above, determining whether any class member suffered a First Amendment injury under the current or prior system of dues deductions or whether the Union was unjustly enriched by their dues would require individualized hearings. For this reason, the common questions do not predominate over individual issues.

   b. Superiority

The second Rule 23(b)(3) requirement is that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." "A class action is the

superior method for managing litigation if no realistic alternative exists." Valentino v. Carter Wallace, 97 F.3d 1227, 508 (9th Cir. 1996).

The Court originally held in the first Order on class certification that "[i]t is not at all clear that a class action for damages is an inherently superior method of determining the constitutionality of Washington's opt-out procedure for union dues deductions." (Dkt. No. 116 at 12.) Plaintiffs now insist that damages are an integral part of their action and the individual damages amounts are small enough that no realistic alternative to a class action exists. (Dkt. No. 120 at 15.) To the extent that Plaintiffs believe that refunds are an equally important objective of the lawsuit, the Court acknowledges that it is unlikely that all dissenting Individual Providers will be able to prosecute their claims individually. But the manageability of a class action as opposed to an action on behalf of a smaller number of named plaintiffs is nonetheless in serious doubt given the Court's reservations about determining the fact of a First Amendment injury on a class-wide basis.

V.      Rule 23(b)(2) Class

In the alternative Plaintiffs ask that the class be certified under Rule 23(b)(2) and argue that damages would be incidental to the declaratory and injunctive relief requested. (Dkt. No. 120 at 16.) Although there is no predominance test under Rule 23(b)(2), the Rule "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Wal-mart Stores, 131 S.Ct. at 2557. Because of the personal nature of the First Amendment injuries at issue here, there is no way to avoid individualized damages based on the deductions made during specific periods where the Individual Provider subjectively did not wish to "join or support" the Union. The Court is not persuaded that a Rule 23(b)(2) class would be appropriate so long as the Plaintiffs request damages based on past deductions.

### VI. Defendants' Request for a Stay Following the Certification Decision in Light of the Supreme Court's Grant of Certiorari in Friedrichs v. California Teachers Association

Although Defendants do not wish the Court to delay a ruling on the renewed motion for class certification (see Dkt. No. 133 at 2 n.1), they ask the Court to stay the case following the class certification decision in light of the Supreme Court's grant of certiorari in Friedrichs v. California Teachers Association. "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir. 1979) However, "if there is even a fair possibility that the stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and quotation marks omitted).

In Friedrichs, the Supreme Court has agreed to hear the following questions presented:

> 1. Whether Abood v. Detroit Bd. of Ed., 431 U.S. 209 (1977), should be overruled and public-sector "agency shop" arrangements invalidated under the First Amendment.
>
> 2. Whether it violates the First Amendment to require that public employees affirmatively object to subsidizing nonchargeable speech by public-sector unions, rather than requiring that employees affirmatively consent to subsidizing such speech.

135 S.Ct. 2933 (June 30, 2015). Although the case concerns full-fledged public sector employees, Defendants argue it will have a sufficiently significant impact on the merits of this case that the Court should stay the case—vacating the dispositive motions deadline and trial date—prior to reaching the merits.

Because the Supreme Court has already held that the rule established in Abood does not apply to quasi-public employees, an answer in the affirmative to the first question presented will only affect the outcome of this case if the Court ultimately agrees with the Union that the named

Plaintiffs are full-fledged public employees. The Court has already indicated that this argument faces an uphill battle in light of the Washington Supreme Court's holding that Individual Providers are not full-fledged public employees. Nonetheless, any safe-harbor argument made on these grounds would dissolve if the Supreme Court were to overrule Abood. To some degree, judicial economy would be served by avoiding the need to consider the Union's fact-intensive arguments about employment status.

Assuming that the named Plaintiffs are quasi-public employees covered by Harris, the second question presented would only definitively affect the outcome of this case if the Supreme Court answers in the affirmative. However, the reasoning the Supreme Court uses in discussing the constitutionality of opt-out—the central question in this case—is highly likely to influence this Court's understanding of the issue even if the Supreme Court answers in the negative.

Plaintiffs argue that a stay is inappropriate here because they seek declaratory and injunctive relief and a stay would work damage on the Plaintiffs (who seek a refund of past deductions) and other Individual Providers currently subjected to deductions without affirmative consent. (Dkt. No. 137 at 5–6.)

While Dependable Highway and other cases hold that a stay "may be" inappropriate in circumstances where an injunction against current harm is requested, there is no absolute rule against granting a stay in those circumstances. Here, the grant of certiorari by the Supreme Court on the constitutionality of opt-out ensures that a stay will facilitate guidance by the ultimate arbiter of the First Amendment and assist this Court in resolving the central open legal question in the case, in contrast to the more peripheral issues or parallel proceedings present in cases such as Dependable (foreign arbitration involving the same parties) and Lockyer v. Mirant Corp., 398 F.3d 1098, 1107–08 (9th Cir. 2005) (disputed scope of automatic stay order from bankruptcy

1  court). Furthermore, because the stay will last no longer than the year or so it will take the

2  Supreme Court to decide Friedrichs, and any Individual Provider with a strong objection to dues

3  deductions can effectively enjoin Defendants' future deductions on an individual basis by opting

4  out any time, the equities do not weigh strongly in Plaintiffs' favor. The Court finds a stay

5  appropriate in these circumstances.

## Conclusion

Because Plaintiffs fail to meet their burden to demonstrate certification is appropriate under the requirements of Rule 23(a) and Rule 23(b)(3) or show they adhere to the characteristics of a Rule 23(b)(2) class, the Renewed Motion for Class Certification is DENIED. The Court further GRANTS the Defendant's Motion to Vacate Dispositive Motion and Trial Dates and ORDERS the Parties to submit a Joint Status Report proposing a new dispositive motion deadline and trial date within thirty (30) days of the Supreme Court's decision in Friedrichs v. California Teachers Association.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of September, 2015.

Marsha J. Pechman
Chief United States District Judge