UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY HOFFMAN, et al.,

    Plaintiff,

 v.

JAY INSLEE, et al.,

    Defendant.

CASE NO. C14-200-MJP

**AMENDED** ORDER ON MOTIONS FOR SUMMARY JUDGMENT

 The above-entitled Court, having received and read:

1. Defendant Department of Social and Health Services, et al. Amended Motion for Summary Judgment (Dkt. No. 171), Plaintiffs' Response (Dkt. No. 182), and Defendants' Reply (Dkt. No. 184);

2. Defendant SEIU Healthcare 775NW's Motion for Summary Judgment (Dkt. No. 172), Plaintiffs' Response (Dkt. No. 182), Defendant's Reply (Dkt. No. 183), and Defendant's Notice of Supplemental Authority (Dkt. No. 189); and

3. Plaintiffs' Motion for Summary Judgment (Dkt. No. 175), Defendants DSHS et al. Response (Dkt. No. 177), Defendant SEIU Response (Dkt. No. 179), and Plaintiffs' Reply (Dkt. No. 185),

and all attached declarations and exhibits, rules as follows:

IT IS ORDERED that the summary judgment motions of Defendants are GRANTED and Plaintiffs' claims are dismissed.

IT IS FURTHER ORDERED that Plaintiffs' motion for summary judgment is PARTIALLY STRICKEN (as moot) and PARTIALLY DENIED.

## Background

Plaintiffs are in-home health care providers who contract with the State of Washington (through the Defendant Department of Social and Health Services; "DSHS") to provide personal health care to disabled persons under a variety of Medicaid programs.  Prior to July 2014, the system for payment of these individual providers (IPs) called for the automatic deduction of union membership dues and "agency fees" from their wages; only by affirmatively contacting the union and "opting out" could the IPs exempt themselves from union dues, but the "agency fee" (which represents that portion of the payment which the union calculated was being spent on collective bargaining in the IPs' behalf) was still deducted.  This system was based on RCW 41.56.113(1)(b)(i).

In 2014, Harris v. Quinn, 134 S.Ct. 2618 (2014) struck down a system of payment and payroll deduction involving union dues for Illinois "personal care assistants" on the grounds that the plaintiffs were not "full-fledged public employees" for whom this First Amendment infringement was otherwise justified.  In response, the State of Washington and Defendant SEIU Healthcare 775 NW ("the Union") renegotiated the dues deduction provision of the collective bargaining agreement ("CBA") which governed the IPs' employment.  The result was a revised

system whereby, as of July 1, 2014, (1) the State ceased making deductions for either dues or agency fees for any IP who expressed their wish not to pay them (i.e., retaining an opt-out system) and (2) any dues deducted from July 1, 2014 forward from any objecting IP were refunded.

## Discussion/Analysis

The summary judgment motions raise two main issues for resolution:

1. Is the current, post-Harris opt-out system unconstitutional?

2. Are Plaintiffs entitled to monetary damages for unjust enrichment for any dues or agency fees deducted prior to Harris?

*The current "opt-out" system is constitutional*

At the heart of Plaintiffs' claims is their argument that the system currently in place regarding the deduction of dues and agency fees is unconstitutional because it requires the IPs to affirmatively declare that they do not wish to have the money deducted from their wages. Plaintiffs base their argument on two cases: Knox v. SEIU, Local 1000, 132 S.Ct. 2277 (2012) and Harris v. Quinn.  But, despite some very creative advocacy by Plaintiffs' counsel, these two cases simply do not stand for the proposition that an opt-out system such as the one in place in Washington creates an impermissible infringement on the First Amendment rights of the affected parties.

Knox concerned a public-sector union in California which operated under an opt-out system ("…if a nonunion employee objected within 30 days to payment of the full amount of union dues, the objecting employee was required to pay only 56.35% of total dues;" 132 S.Ct at 2285.)  At issue was a "special assessment" which the union unilaterally imposed (after the regular objection period for that year had passed) to create a "Political Fight-Back Fund" to

contest two ballot initiatives which it judged to be adverse to its interests. The Supreme Court invalidated the assessment as an impermissible infringement on First Amendment rights.

Plaintiffs attempt to argue that Knox stands for the principle that the Constitution requires an opt-in process for union fee deductions to pass First Amendment muster. Although the Court did state hypothetically that "[t]o respect the limits of the First Amendment, the union should have sent out a new notice allowing nonmembers to opt in to the special fee rather than requiring them to opt out" (Id. at 2293), nowhere in the opinion does it state that an opt-out procedure is unconstitutional.

What is apparent from the opinion is that the Knox court considers the opt-out process to have barely passed constitutional muster, that its presence in the landscape of union labor relations is the result of non-rigorous legal thinking and analysis ("…acceptance of the opt-out approach appears to have come about more as a historical accident than through the careful application of First Amendment principles;" "[b]y… permitting the use of an opt-out system for the collection of fees levied to cover nonchargeable expenses, our prior decisions approach, if they do not cross, the limit of what the First Amendment can tolerate;" Id. at 2290, 2291), and that its days may be numbered. But nowhere does the Supreme Court say, as Plaintiffs claim, that "as [a] 'general rule' the First Amendment requires opt-[in] procedures…" (Response at 7.) In fact, at one point in the Knox opinion, the Court refers to the opt-out process as "tolerable if employees are able at the time in question to make an informed choice." (132 S.Ct. at 2292; emphasis supplied.)

So, according to the Court's reading of Knox, the opt-out process is not constitutionally impermissible. The other case Plaintiffs rely on is Harris v Quinn, *supra*. The problem with relying on Harris is that it has nothing to say about the constitutionality of opt-out processes.

The case concerns the unconstitutionality of compelling persons who are not "full-fledged public employees" to support political speech by a third party if they do not wish to do so. The personal care assistants in Harris could not even "opt out" of paying the agency fee assessed against them, and it was the compulsory nature of that payment which was invalidated by the Harris court. The Court agrees with Defendants that Plaintiffs are trying to weave together the Harris and Knox opinions to create a constitutional principle that neither stands for. As a matter of law, Plaintiffs cannot prevail on a claim that the opt-out process utilized by the State and the Union is unconstitutional.

The Court's understanding of the constitutionality of the opt-out process is confirmed by the Friedrichs cases. The plaintiffs in Friedrichs argued that "[b]y requiring Plaintiffs to undergo 'opt out' procedures to avoid making financial contributions in support on 'non-chargeable' union expenditures, California's agency-shop arrangement violates their rights to free speech and association under the First and Fourteenth Amendments to the United States Constitution." Friedrichs v. Cal. Teachers Ass'n, 2013 U.S. Dist. LEXIS 188995, *4 (C.D.Cal., Dec. 5, 2013)(citations omitted).

In an interesting procedural move, the Friedrichs plaintiffs conceded to judgment on the pleadings at the trial court level, acknowledging that their claims were at that time foreclosed by Ninth Circuit and Supreme Court precedent holding that "the First Amendment did not require an 'opt in' procedure for nonunion members to pay fees… The parties do not dispute that Abood and Mitchell foreclose Plaintiffs' claims, and the Court agrees that these decisions are controlling." Id. at *5-6.

Upon receiving the appeal of the judgment on the pleadings, the Ninth Circuit summarily affirmed the result: "…the questions presented in this appeal are so insubstantial as to not require

1  further argument, because they are governed by controlling Supreme Court and Ninth Circuit
2  precedent." <u>Friedrichs v. Cal. Teachers Ass'n</u>, 2014 U.S. App. LEXIS 24935 (2014).  The
3  Supreme Court granted certiorari (135 S.Ct. 2933 (2015)), but split evenly, thereby affirming the
4  lower court result.  136 S.Ct 1083 (2016).  <u>Friedrichs</u> is thus still good law and controlling
5  precedent, and the opt-out process as utilized in the instant case is constitutionally permissible.

6        There is a "sub-issue" raised by Plaintiffs' summary judgment motion.  While the State
7  of Washington does not weigh in on this question, Plaintiffs and the Union expend quite a bit of
8  argument attempting to establish whether, as a matter of law and based on the standards
9  enunciated in <u>Harris</u>, the IPs are or are not "full-fledged public employees" ("FFPEs") for
10 purposes of collective bargaining (a distinction which the <u>Harris</u> court found important in
11 determining that the plaintiffs there could not be compelled – as the true FFPEs were – to
12 subsidize political speech with which they did not agree).

13       Based on the Court's ruling concerning the constitutionality of the opt-out process, and
14 the finding that <u>Harris</u> does not touch upon whether the opt-out process is permissible, Plaintiffs'
15 "what makes a true FFPE?" question is not relevant to this case.  To find that the IPs are not
16 FFPEs only would only mean they cannot be compelled without recourse to give money to a
17 union they do not wish to join or support.  It does not mean, for the reasons cited above, that the
18 Union may not employ an opt-out process to determine whether they wish to contribute money.
19 This portion of Plaintiffs' summary judgment will be stricken as moot.

20       Resolution of the present constitutionality of the opt-out process leads to dismissal of the
21 claims for declaratory and injunctive relief: the Court finds that Plaintiffs are not entitled to a
22 declaratory judgment that Defendants' process violates the Constitution and, since there is no
23 likelihood of prevailing on the merits, Plaintiffs are not entitled to injunctive relief.  Plaintiffs
24

argue that the *possibility* that the State and the Union could resume making mandatory deductions in the future entitles them to a declaration that the Washington system was unconstitutional.  But the case law requires a "live controversy" – "a substantial controversy, between parties having adverse legal interests. Of sufficient immediacy and reality" – before a federal court may grant a declaratory judgment. (*citation omitted*)  The speculative possibility that the State or the Union might attempt to re-introduce the pre-<u>Harris</u> system absent a court order finding it constitutional does not satisfy the "live controversy" requirement.

*<u>Defendants not liable for damages under an "unjust enrichment" theory or for § 1983 violation</u>*

The remaining issue concerns the money damages Plaintiffs have requested; they seek an order

> restoring to non-member Individual Providers all fees that they have paid to SEIU beginning from three years prior to the filing of this lawsuit [*February 2014*], or alternatively, an award of damages in the amount of such fees.  Plaintiffs further seek an award of nominal damages for violation of their rights under the First Amendment.

Dkt. No. 68, Third Amended Complaint, ¶ 7.4.  Their theories of recovery are under § 1983 (<u>id.</u> at ¶ 6.2) and "unjust enrichment."  (<u>Id.</u> at ¶ 6.3.)

The State Defendants can be dealt with summarily.  Plaintiffs have sued them in their official capacities (*see* case caption, <u>id.</u> at 1[1]) and the Eleventh Amendment bars claims for money damages against state agency officials in their official capacities. <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63, 677 (1974).  Although both sides go on to argue about whether these individuals are also entitled to qualified immunity, Plaintiffs never dispute that (1) they sued the State Defendants in their official capacity and (2) those Defendants are thereby immunized from

---

[1] Jay Inslee is named "in his capacity as Governor of the State of Washington," and Kevin Quigley is sued "in his capacity as Secretary of the Department of Social and Health Services."

money damages by the Eleventh Amendment. The Court declines to address the issue of "qualified immunity" as unnecessary.

In terms of money damages sought against the Union, Plaintiffs seek the moneys collected under the pre-Harris system (requiring an "opt-out" to avoid paying union dues, with a mandatory "agency fee" deduction). No one who has opted out since July 1, 2014 has been charged either union dues or agency fees.

The Union asserts a "good faith" defense to the alleged violations of § 1983, citing Ninth Circuit case law holding that a private party sued under § 1983 is not liable for money damages if that party was acting in good faith reliance on a facially valid state law. Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). The Union maintains that, prior to Harris, it operated under the good faith belief that the statutory scheme under which it collected its dues and fees was constitutionally sound.

The Court is unpersuaded by Plaintiffs' arguments to the contrary. They assert that the Union bears the burden of establishing that they had the "subjective state of mind" indicating a good faith belief in their conduct. Their case support for this comes from two California District Court cases (Ambrose v. Coffey, 696 F.Supp.2d 1119, 1139 (E.D.Cal. 2010), *citing* Robinson v. City of San Bernandino Police Dept., 992 F.Supp. 1998, 1207 (C.D.Cal. 1998)). Even to the extent that this is valid precedent, it is a low threshold. The Union states several times in its briefing that it considered the RCW on which its system relied to be a facially valid statute and (pre-Harris) had no reason to think to the contrary. The burden then falls on the other party to demonstrate why the Court should not give credence to that assertion.

The strongest argument that Plaintiffs can muster to suggest that the Union's allegations of "good faith" lack credence is the observation that the Union sponsored the ballot initiative

which (upon passage) later became RCW 41.56.113(1)(b), the state law that permits the deduction of union dues and/or agency fees from the salaries of the IPs. It is not a persuasive position. In the first place, the ballot initiative (regardless of who sponsored it) still had to be approved by a majority of voters in the state and then (a year later) enacted into law by the Washington State Legislature which the Court will assume was doing its best to create constitutional legislation. Further, the Court fails to see how the proposition asserted by Plaintiffs (that the Union somehow did not have a good faith belief in the validity of the statute) follows from the Union's involvement in the ballot process; one has no bearing on the other. Nothing presented by Plaintiffs in any way invalidates the Union's claim that in good faith they relied on (and had a right to rely on) the constitutionality of the RCW . Defendants are entitled to rely on the defense and entitled to summary judgment on the § 1983 claim.

Regarding unjust enrichment, Plaintiffs cannot satisfy all the elements of that common law tort. Those elements are:

1. A benefit conferred upon a party
2. The receiving party being aware of the benefit
3. An inequity which would result from the receiving party being permitted to retain the benefit.

Young v. Young, 139 Wn.App. 560, 576 (2007).

Challenged to establish what inequity arises from the Union retaining the pre-Harris funds, Plaintiffs' response is, basically: "A violation of the First Amendment is *per se* inequitable." But, as demonstrated above, Plaintiffs have failed to establish that the opt-out system employed by the State and the Union is unconstitutional, therefore their proof fails and the Union is entitled to summary judgment of dismissal on the unjust enrichment claim.

AMENDED ORDER ON MOTIONS FOR
SUMMARY JUDGMENT- 9

**Conclusion**

Neither <u>Harris</u> nor <u>Knox</u> declares the opt-out system at issue here unconstitutional and binding Ninth Circuit and Supreme Court precedent uphold its constitutionality. The State Defendants are immune from suit for money damages. The Defendant Union relied in good faith on a statute which it believed to be valid, which immunizes it from a § 1983 claim. Plaintiffs' unjust enrichment claims fail because no inequity results from Defendants being allowed to retain the funds.

The Court grants the summary judgment motions of both Defendants and dismisses the claims of Plaintiffs against them. Plaintiffs' summary judgment is partially stricken as moot and the remainder of the motion is denied.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 19th day of October, 2016.

Marsha J. Pechman
United States District Judge