The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| SUSAN ROUTH, LINDA EBY, MARY JANE AURDAL OLSON, DOUG SCHYLER and SANDY SCHYLER, on behalf of themselves and others similarly situated,<br><br>            Plaintiff,<br><br>     v.<br><br>SEIU HEALTHCARE 775NW,<br><br>            Defendant. | NO.  2:14-cv-00200 MJP<br><br><br>ORDER GRANTING (1) JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; (2) MOTION FOR CLASS CERTIFICATION; AND (3) MOTION FOR ATTORNEY'S FEES AND COSTS |

This case came before the Court on the Joint Motion for Final Approval of Class Settlement, Plaintiffs' Motion for Class Certification and Plaintiffs' Motion for Attorney's Fees and Costs. The Court held a final fairness hearing on April 29, 2020. Having considered the papers on file and the argument of counsel, the Court finds and orders as follows:

1.       Unless otherwise provided herein, all capitalized terms in this Order shall have the same meaning as set forth in the Class Action Settlement and Release, attached hereto as Appendix A.

ORDER - 1 No.  2:14-
cv-00200 MJP

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

2.      Notice to the Class has been completed in conformity with the preliminary approval order. Dkt. 235. This Notice was the best notice practicable under the circumstances, provided due and adequate notice of the proceedings and of the matters set forth therein, and fully satisfied all applicable requirements of law and due process.

3.      Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court certifies the following Class for purposes of the Settlement: All IPs who, during the period February 11, 2011, through February 11, 2019, (the "Settlement Class Period") paid dues or fees to SEIU 775 through payroll deductions made by the State of Washington pursuant to RCW 41.56.113(1)(b)(i), without a signed Union membership/dues authorization card in effect at the time of the deduction. The Court further certifies the following two sub-classes: (1) those Class members who at some point objected to union membership and/or to paying money to SEIU 775 ("Objector Subclass"); and (2) those Class members who paid union dues without any objection ("Non-Objector Subclass"). In certifying the Class and Subclasses, the Court makes the following findings:

a.      The Class and each Subclass are so numerous that joinder of all members is impracticable;

b.      There are questions of law or fact common to the Class and to each Subclass;

c.      Plaintiffs' claims are typical of the claims being resolved through the proposed settlement, and the claims of the Class Representatives for each Subclass are typical of the claims of the members of each Subclass;

d.      Plaintiffs are capable of fairly and adequately protecting the interests of the Class members;

ORDER - 2 No.  2:14-
cv-00200 MJP

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

e. Common questions of law and fact predominate over questions affecting only individual Class and Subclass members. Accordingly, the Class, and each Subclass, is sufficiently cohesive to warrant certification; and;

f. Certification of the Class and Subclasses is superior to other available methods for the fair and efficient resolution of the claims of the Class members.

4. As representatives of the Objector Subclass, the Court appoints Susan Routh, Mary Jane Olson and Linda Eby. As representatives of the Non-Objector Subclass, the Court appoints Doug Schlyer and Sandy Schlyer.

5. As Class Counsel, the Court appoints Jeffrey Tilden and Michael Brown of Gordon Tilden Thomas & Cordell LLP, and Wright Noel of Carson Noel PLLC.

6. No objections to the Settlement have been lodged.

7. The terms set forth in the Settlement are approved as being fair, adequate, and reasonable in light of the amount of recovery obtained in relation to the risks faced by the Class in litigating the claims, and in relation to the specific litigation risks faced by each Subclass. The Court finds that the Settlement was negotiated in good faith and at arm's length by qualified, experienced and informed counsel.

8. The Court approves incentive awards to the class representatives as follows: (1) $5,000 each to Susan Routh, Linda Eby and Mary Jane Olson; (2) $2,000 each to Doug Schlyer and Sandy Schlyer. The Court finds that these awards are reasonable in light of the time, effort and inconvenience each representative incurred in service to the Class.

9. The Court awards Plaintiffs attorney's fees in the amount of 25 percent of the $3,250,000 gross Settlement amount, which amounts to a fee of $812,500. This amount is fair and reasonable in light of the difficult and unsettled legal issues involved in this case, the

ORDER - 3 No.  2:14-cv-00200 MJP

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

substantial risks Class Counsel undertook in working on this case on a contingency basis, and the long delay in Class Counsel receiving any compensation for their work.

10.     The Court has performed a rough cross-check with what the lodestar fee recovery method would yield here. The total hours billed by Class Counsel are 1,829. The current hourly billing rates for Class Counsel—$450 for Michael Brown, $375 for Wright Noel, and $675 for Jeffrey Tilden—are reasonable and consistent with the rates in the Seattle market for attorneys of similar experience, skill and credentials working on similar cases.[1] The lodestar based on those hours and rates is $782,074. The Court finds that, because of the contingent nature of this case and the risk Class Counsel accepted in working on a contingent basis, a lodestar multiplier of 1.2 would be reasonable under a lodestar approach. Applying that multiplier, the rough lodestar recovery would be $938,488. The rough lodestar cross-check confirms that Plaintiffs' requested fees based on percentage of the recovery ($812,500) are fair and reasonable.

11.     The Court awards $19,461 in attorney's fees and costs. The Court finds this amount to be reasonable in light of the circumstance of this litigation.

12.     The Court awards $80,000 in fees to JND Class Action Administration for work performed in administering Class Notice and payments to the Class. The Court finds this amount fair and reasonable in light of the large number of mailed notices, the number of exclusion notices, and the number of Settlement checks JND will be required to process.

13.     SEIU 775 shall issue payment to each of the Class Members as provided in Section III-B of the Settlement Agreement. The Net Class Fund is calculated as follows:

---

[1] For purposes of this lodestar crosscheck, the Court will apply these current rates to account for the long delay in Class Counsel receiving any compensation for their work on this matter. *See Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir., 1992).

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

a.  Total Settlement Amount:    $3,250,000
b.  Attorney's Fees (25%):      $812,500
c.  Costs:                      $19,461
d.  Incentive Payments:         $19,000
e.  Class Administration:       $80,000
**f.  Net Class Fund:           $2,319,039**

14.     Pursuant to the terms of the Settlement Agreement, upon entry of this Order, the

members of the Class who have not submitted a timely and valid written request to opt out of the

Settlement, release SEIU according to the terms set forth in Section III-C of the Settlement

Agreement.

15.     The Court retains jurisdiction over the claims against SEIU 775 for purposes of

addressing: (1) any disputes arising from the Settlement Agreement; (2) settlement

administration matters; and (3) such post-judgment matters as may be appropriate under the

Federal Rules of Civil Procedure.

16.     The Clerk shall enter a judgment certifying the Class and Subclasses, finally

approving the Settlement Agreement, and awarding fees, costs, incentive payments and class

administration fees as set forth above.

17.     The terms of the Settlement Agreement are incorporated herein, except as

otherwise explicitly provided herein.

18.     The Court GRANTS the Joint Motion for Final Approval of Class Settlement,

Motion for Class Certification and Motion for Attorney's Fees and Costs.

IT IS SO ORDERED.

Dated: April 29, 2020

_____
Honorable Marsha Pechman
United States District Judge

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2020, a true and correct copy of the foregoing was

served on counsel via electronic mail only as follows:

**Attorneys for Defendant SEIU:**
Michael C. Subit, WSBA #29189
Frank Freed Subit & Thomas LLP
705 Second Avenue, Suite 1200
Seattle, WA  98104-1798
msubit@frankfreed.com
bbloom@frankfreed.com

Scott A. Kronland, Admitted Pro Hac Vice
Altshuler Berzon, LLP
177 Post Street, Suite 300
San Francisco, CA  94108
skronland@altber.com

_s/ *Michael P. Brown*_
Michael P. Brown, WSBA #45618

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

**APPENDIX A**

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

## I.    INTRODUCTION

This Settlement Agreement and Release ("Settlement Agreement") is hereby entered by and between Defendant Service Employees International Union Local 775 ("SEIU 775" or "the Union") and Plaintiffs Susan Routh, Linda Eby, Mary Jane Aurdul Olson, Doug Schlyer, and Sandy Schlyer ("Plaintiffs"). Plaintiffs are acting both individually and in their capacity as putative class representatives for the Class defined herein in the civil action currently entitled *Routh v. SEIU Healthcare 775NW*, No. 2:14-cv-00200-MJP, and formerly entitled *Routh v. Inslee*, No. 16-35749 (9th Cir.), *Hoffman v. Inslee*, and *Centeno v. DSHS* (the "Case").

## II.    RECITALS

A.    Class Certification  For purposes of this Settlement Agreement, Plaintiffs and SEIU 775 (collectively "the Parties") agree to certification of the Class defined in Section III.A.2 below.

B.    Investigations and Due Diligence  The Parties have conducted informal and formal discovery and investigation of the facts and the law during their respective prosecution and defense of this Case. As part of this review and investigation, the Parties and their counsel have: (1) interviewed the relevant witnesses; (2) collected, reviewed, and analyzed the relevant documents and other information concerning the composition of the putative Sub-Classes, the merits of Plaintiffs' claims and SEIU 775's defenses, and the potential damages; and (3) amply considered and analyzed the law governing Plaintiffs' claims and and SEIU 775's defenses.

C.    Proceedings Before Mediation  Plaintiffs filed this case on February 11, 2014, as a putative class action against the State of Washington Department of Social & Health Services. Only Routh was an original plaintiff. On August 5, 2014, Plaintiffs filed a Second Amended Complaint adding SEIU 775 as a defendant. On February 6, 2015, Plaintiffs filed a Third Amended Complaint that added Olson and Eby as plaintiffs and Governor Jay Inslee as a defendant.

On June 9, 2015, the district court denied Plaintiffs' motion for class certification. On September 17, 2015, the district court denied Plaintiffs' renewed motion for class certification.

On August 16, 2016, the district court granted the State Defendants' and SEIU 775's motions for summary judgment. The court denied Plaintiffs' motion for summary judgment in part and struck their motion in part. Following Plaintiffs' motion for reconsideration, on October 20, 2016, the district court issued an amended summary judgment order, which again granted summary judgment in favor of defendants, and denied in part and struck in part Plaintiffs' cross-motion.

Plaintiffs timely appealed the forementioned adverse rulings to the United States Court of Appeals for the Ninth Circuit. While Plaintiffs' appeal was pending, on June 27, 2018, the United States Supreme Court issued *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). *Janus* disposed of several of the legal issues presented in Plaintiffs' appeal. Actions take by SEIU 775 and the State Defendants in response to *Janus* mooted Plaintiffs' request for prospective relief. Only Plaintiffs' claims that they and the Class were entitled to a refund, in the form of damages and/or restitution, of the Union dues/fees they had paid remained potentially viable.

In light of *Janus* and these events, Plaintiffs, the State Defendants, and SEIU 775 jointly requested deferral of oral argument and referral to mediation. The Ninth Circuit so agreed.

D.     <u>Mediation & Settlement Negotiations</u>  The mediation took place in Seattle with Teresa Wakeen on October 10, 2018. At the conclusion of the mediation the Plaintiffs, State Defendants, and SEIU 775 executed a Settlement Term Sheet outlining the conceptual terms of a settlement. Since the execution of that Settlement Term Sheet, the Parties have continued to negotiate to reach this Agreement of all the terms and conditions of Settlement. All of the Parties' settlement negotiations have been conducted in good faith and at arm's length. Through the Parties' mediation conference and their subsequent negotiations, the Parties have reached a class action settlement of this Case that they believe to be fair, adequate and reasonable, and that Plaintiffs believe is in the best interests of the Class. This Agreement memorializes the terms of the final Settlement agreed to by the Parties. Once this Agreement is executed by all Parties, this Agreement shall supersede the Settlement Term Sheet.

E.     <u>Proceedings Following Mediation</u>  On December 5, 2018, the Ninth Circuit agreed to the parties' request to remand the Case to the district court without prejudice to the reinstatement of the appeal against SEIU 775 in the event the parties are unable to finalize the settlement or the district court denies approval of the parties' final class action settlement agreement. On January 3, 2019, the district court approved the stipulated dismissal with prejudice of the State Defendants. On January 8, 2019, Plaintiffs filed a Fourth Amended Complaint limiting their claims to ones seeking monetary relief against SEIU 775 and adding the Schlyers as Plaintiffs.

## III.     <u>AGREEMENTS</u>

NOW, THEREFORE, IT IS HEREBY STIPULATED by the Parties, subject to the approval of the United States District Court for the Western District of Washington, that all claims in this Case are hereby compromised and settled on a class action basis pursuant to the terms and conditions outlined in this Agreement. If the Parties' Settlement is finally approved by the District Court, then claims that were asserted in the Complaint shall be fully dismissed on the merits and with prejudice, subject to the following terms and conditions.

A.      Definitions.

        1.      "Class" or "Class Members" means all Individual Providers who during the Settlement Class Period paid dues or fees to SEIU 775 through payroll deductions made by the State of Washington pursuant to RCW 41.56.113(1)(b)(i) without a signed Union membership/dues authorization card in effect at the time of the deduction.

        2.      "Class Counsel" means Gorden Tilden Thomas & Cordell LLP and Carson & Noel PLLC.

        3.      "District Court" means the United States District for the Western District of Washington.

        4.      "Effective Date" means the date that is the later of: (1) 31 days following the District Court's entry of the Final Approval Order, or (2) if a timely appeal is made, the date of the final resolution of that appeal and any subsequent appeals, resulting in final judicial approval of the Settlement.

        5.      "Eligible Settlement Class Members" means those Class Members who do not submit a Valid Exclusion Request.

        6.      "Final Approval Order" refers to an order by the District Court that grants final approval of the Settlement.

        7.      "Individual Provider" has the meaning set forth in RCW 74.39A.240(3).

        8.      The "Initial Mailing Date" is the date that the Settlement Administrator first mails the Notice approved by the District Court to all Class Members.

        9.      "Notice" means the notice of this Settlement that is attached hereto as Exhibit 1 and that the parties intend to be mailed to Class Members and to be published on the settlement website following the District Court's entry of an order granting preliminary approval of the Settlement.

        10.     The "Notice Deadline" is ninety (90) days after the Initial Mailing Date.

        11.     "Objection" means a written objection to the Settlement by an Eligible Settlement Class Member that is both filed with the District Court and mailed to counsel for the Parties, along with any supporting documentation that the person wishes the Court to consider, no later than ninety (90) days after the Initial Mailing Date.

        12.     "Settlement" means the settlement reached by the Parties through the mediation and subsequent negotiation process described in Section II.D. above, as set forth in this Agreement.

        13.     "Settlement Administrator" means JND Legal Administration.

3

14.    "Settlement Award" means the gross (before tax or other withholdings) settlement payment to any Eligible Settlement Class Member.

15.    "Settlement Class Period" means the pay periods from February 11, 2011, through February 11, 2019.

16.    "Valid Exclusion Request" means a request by a Class Member to opt out of the Settlement that meets the following criteria: (i) is in writing; (ii) states that individual's current address; (iii) contains the following statement: "I request that I be excluded from the Settlement Class in the case of *Routh v. SEIU Healthcare 775NW*"; (iv) is signed by the individual; and (v) is mailed to the Settlement Administrator at the address provided in the Notice and postmarked within ninety (90) calendar days after the Initial Mailing Date.

17.    The "Objector Sub-Class" comprises those Class Members who provided written notice to SEIU 775 and/or the State of Washington that they objected to paying dues or fees to SEIU 775.

18.    The "Non-Objector Sub-Class" comprises all Class Members not falling within the Objector Sub-Class.

B.    Settlement Consideration

1.    Total Settlement Amount   SEIU 775 agrees to pay a Total Settlement Amount of $3,250,000.00 for a common fund settlement of this lawsuit. The Total Settlement Amount is inclusive of, and shall be used to satisfy, all of the following: (1) the Settlement Awards, (2) the service awards to be paid to the named Plaintiffs (hereafter, the "Service Awards"), (3) the award of attorneys' fees to Class Counsel (hereafter, the "Attorneys' Fees Award"), (4) the expenses and costs of litigation to be paid to Class Counsel (hereafter, the "Costs Payment"), and (5) the amount to be paid to the Settlement Administrator as compensation for the services set forth in this Settlement Agreement (hereafter the "Settlement Administration Expenses Award"), all as approved by the District Court.

2.    Allocation of Total Setttlement Amount   Of the Total Settlement Amount, $1,000,00,00 will be allocated to the claims of the Objector Sub-Class (representing 4/13 of the Total Settlement Amount) and $2,250,000.00 will be allocated to the claims of the Non-Objector Sub-Class (representing 9/13 of the Total Settlement Amount).

3.    Net Class Fund   As part of the motion for final approval, Class Counsel will submit to the district court an application for an Attorneys' Fee Award of twenty-five percent (25%) of the Total Settlement Amount ($812,500), an application for a Costs Payment not to exceed $26,007.50, and an application for Service Awards not to exceed $5,000 for each Plaintiff (totaling no more than $25,000). The Parties will submit to the District Court an application for a Settlement Administration Expenses Award not to exceed $80,000. The payment and award amounts approved

4

by the District Court will be deducted from the Total Settlement Amount, and the remainder after these deductions (the "Net Class Fund") shall be available to fund Settlement Awards to Eligible Settlement Class Members. If the Court approves the payments and awards in each category described above, the Net Class Fund will be no less than $2,306,492.50, calculated as follows:

| | |
|---|---|
| **$3,250,000.00** | **Total Settlement Amount** |
| $812,500.00 | Attorneys' Fee Award (25%) |
| 26,007.50 | Costs Payment |
| $80,000.00 | Settlement Administration Expenses Award |
| - $25,000.00 | Service Awards |
| **$ 2,306,492.5** | **Estimated Net Class Fund** |

The actual Net Class Fund will be calculated in accordance with this paragraph after deducting the payments and awards the District Court finally approves. The Net Class Fund will be allocated as follows: 4/13 of the Net Class Fund will be allocated to the Objector Sub-Class and 9/13 of the Net Class Fund will be allocated to the Non-Objector Sub-Class.

       4.    <u>Allocation of Net Class Fund Among Eligible Settlement Class Members</u>
The Settlement Award payable to each Eligible Settlement Class Member will be a pro rata share of the Net Class Fund for the Sub-Class of which he or she is a member. This pro rata share shall be determined by dividing the total amount of dues/fees an individual Eligible Settlement Class Member paid to SEIU 775 during the Settlement Class Period without a signed Union membership/dues authorization card in effect at the time of payment (less any refunds already provided by SEIU 775) by the total amount of dues and/or fees paid to SEIU 775 without a signed Union membership/dues authorization card in effect during the Class Period by the Eligible Settlement Class Members of the Sub-Class of which he or she is a member (less any refunds already provided by SEIU 775). The resulting percentage shall be multiplied by the Net Class Fund for the Sub-Class of which he or she is a member to determine the Eligible Settlement Class Member's individual Settlement Award.

   C.  <u>Release of SEIU 775</u>

      As of the Effective Date, each Plaintiff, and all Eligible Settlement Class Members, together with their respective heirs, executors, administrators, representatives, successors, predecessors-in-interest, and assigns (the "Releasing Parties") hereby release, resolve, relinquish, and discharge forever SEIU 775 its officers, employees, and agents from all Released Claims. "Released Claims" means any and all claims and causes of action that were or could have been asserted in the Case and any claims against SEIU 775 for a refund or rebate of Union dues or fees that arose during the Settlement Class Period, including without limitation claims for actual, compensatory, and exemplary damages, liquidated damages, interest, and attorneys' fees, costs,

and expenses. The release provided in this Settlement Agreement shall become effective on the Effective Date without the need for any further action, notice, condition, or event.

   D.  Contact with Class Members About this Agreement

   The Class includes current members of SEIU 775. SEIU's and SEIU 775's Constitution and Bylaws provide that individuals must have been Union members for a certain period of time in order to be eligible to run for Union officer. Union members who do not exclude themselves from the Settlement will lose their membership credit for the period for which the Class Member is eligible to receive a Settlement Award. The Parties agree that the Union may communicate in writing the following message to Class Members who are current Union members:

   Under SEIU 775's Constitution and Bylaws, Article 6.6: "Only regular members in good standing are eligible to be nominated for, elected to, or hold office in this union… No person shall be eligible to be nominated for or hold office who has not been a member in good standing continuously for six (6) months, unless waived by the International President for good cause shown."

   Under SEIU's Constitution and Bylaws, Article VI, Section 4: "Section 4. No person shall be eligible for office in this International Union who has not been a member in continuous good standing for at least two years immediately preceding his or her election in the International Union or Local Unions chartered by this International Union or in any labor organization which becomes affiliated with this International Union. This requirement may be reduced by the International Executive Board to no less than 60 days if necessary to expand eligibility for office to members of organizations newly associated with the International Union pursuant to Article XI, Section 6. In the case of the Retired Member position on the International Executive Board, only retired members who have been members in good standing for two years prior to the Convention as either members, retired members or life members of the Local Union shall be eligible to serve."

   Therefore, anyone wishing to be eligible to hold office in SEIU 775 or SEIU who chooses to obtain a refund under this Settlement Agreement may lose his or her eligibility to run for office.


   E.  Notice/Approval of Settlement Agreement

   The Parties agree to the following procedures for obtaining preliminary approval of the Settlement, certifying the Class for purposes of settlement, notifying the Class Members, obtaining final approval of the Settlement, and implementing payments of Settlement Awards: The Parties shall file a motion with the District Court to obtain preliminary approval of the Settlement in

conformity with this Agreement ("Preliminary Approval Motion") within twenty-one (21) days of the execution of this Agreement by all parties.

1.      The Parties will ask the District Court to enter an order (the "Preliminary Approval Order") preliminarily approving the Settlement and this Agreement, approving the form of the Notice, approving the method of submission of the Notice to the Class and the claims process, and setting a date for a Final Fairness Hearing to determine whether the Court will grant final approval of the Settlement.

2.      The Plaintiffs will ask the Court to certify the Class for purposes of settlement, finding Plaintiffs to be adequate and typical class representatives of the Class for purposes of settlement and certifying Plaintiffs' attorneys as Class Counsel. Solely for purposes of the claims that are subject to this Agreement, and without prejudice to SEIU 775's right to object to class certification in the event the district court does not issue final approval of the Settlement or if the Settlement otherwise becomes null and void, SEIU 775 agrees that Plaintiffs satisfy the elements of Rule 23 for class certification and stipulates to certification of the Class for settlement purposes only. More specifically, the parties stipulate and agree only for purposes of settling the Case that:

a.      The Class is so numerous as to make it impracticable to join all Class Members.

b.      There is an ascertainable Class.

c.      There are common questions of law and fact including, but not necessarily limited to, the following:

i.      Under what circumstances does the First Amendment prohibit the collection of dues from public employees without affirmative consent?

ii.      What actions constitute affirmative consent for the purpose of the collection of dues from public employees?

iii.      Under what circumstances do bargaining unit members who paid dues without affirmative consent suffer a cognizable constitutional injury?

iv.      Whether the good faith defense bars § 1983 claims for dues refunds where the Union collected dues and fees in accordance with a presumptively constitutional state statute?

7

       v.     Whether Washington recognizes a claim for unjust enrichment where Washington law authorized the Union's collection of the dues and fees for which restitution is sought?

       d.     Plaintiffs Routh, Eby, and Olson's claims are typical of the claims of members of the Objector Sub-Class. Plaintiffs Doug and Linda Schlyer's claims are typical of the claims of the members of the Non-Objector Sub-Class.

       e.     For the purposes of settlement only, plaintiffs Routh, Eby and Olson are adequate representative of the Objector Sub-Class. For the purposes of settlement, plaitniffs Doug and Linda Schyler are adequate representatives of the Non-Objector Sub-Class.

       f.     For the purposes of settlement, questions of law and fact common to the members of the Class predominate over questions affecting individual members in the Class and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

       g.     Jeffrey I. Tilden and Michael P. Brown of Gordon Tilden Thomas & Cordell ("Gordon Tilden") and Wright Noel of Carson & Noel will fairly and adequately protect the interests of the Class and should be deemed "Class Counsel."

       h.     The Notice is appropriate to inform the Class Members of their rights.

       3.     SEIU 775 shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715(b) to the appropriate state official of each state in which a Class Member resides and the appropriate Federal official within 10 days of the filing of the Preliminary Approval Motion. The parties agree that the state of the last known address as identified in the Union's records pertaining to each Class Member shall identify the state of residence for that Class member.

       4.     Subject to the District Court's approval, the Notice shall be provided to Class Members using the following procedures:

       i.     SEIU 775 will provide the Settlement Administrator with the names and whatever addresses for Class Members it has in its possession and other necessary information, including but not limited to the amount of dues and fees paid by, and refunds already provided to, Class Members, that the Settlement Administrator will use when issuing the Notice to Class Members and when issuing settlement checks for Eligible Settlement Class Members. The Settlement Administrator shall not share this

8

information with Plaintiffs and shall hold it in confidence under paragraph F.2.

ii.   Within 20 (twenty) days of the date the District Court issues the Preliminary Approval Order, the Settlement Administrator shall mail the Notice to all Class Members ("Initial Mailing Date") in the form attached as <u>Exhibit 1</u> hereto and shall provide SEIU 775's counsel and Class Counsel with a copy of the mail-merge spreadsheet used for the Notice mailings, which will include the estimated Settlement Award for each Class Member. The estimated Settlement Award for each Class Member will assume all Class Members participate in the Settlement.

iii.   The Notice shall also provide that Class Members who wish to exclude themselves (*i.e.,* opt out) from the Settlement Class must mail a letter to the Settlement Administrator requesting exclusion from the Settlement Class on or before the Notice Deadline. An exclusion request must: (i) be in writing; (ii) state the Class Member's current address; (iii) contain the following statement: "I request that I be excluded from the Settlement Class in the case of *Routh v. SEIU Healthcare 775 NW*"; (iv) be signed; and (v) be mailed to the Settlement Administrator at the address provided in the Notice and postmarked by the Notice Deadline. Each individual who properly submits a timely written request for exclusion shall be excluded from the Settlement Class and shall have no rights under the Settlement Agreement. Class Members who fail to submit a valid and timely request for exclusion on or before the Notice Deadline shall be bound by all terms of the Settlement and any final judgment entered in this Case if the Settlement is approved by the District Court, regardless of whether they have objected to the Settlement. An exclusion request shall be deemed timely if it is postmarked by the Notice Deadline.

iv.   The mailed Notice shall provide that Class Members who do not opt out and who wish to object to the Settlement must file with the Court and submit to Class Counsel and SEIU 775's counsel a written statement objecting to the Settlement ("Objection") on or before the Notice Deadline. If a person wishes to have the Court consider an Objection, the person (i) must not exclude himself or herself from the Settlement Class and (ii) must file with the Court and mail to counsel for the Parties the Objection, along with any supporting documentation that the person wishes the Court to consider, by the Notice Deadline. If such Objection

is submitted and overruled by the Court, the objecting member of the Settlement Class shall remain fully bound by the terms of the Settlement, including the Release of SEIU 775, as long as the Settlement is granted final approval by the Court. The Parties shall submit any responses to Objections no later than fourteen (14) days after the Notice Deadline. Any Eligible Settlement Class Member who does not appear individually or through counsel and who does not challenge or comment upon the fairness and adequacy of the Settlement or Class Counsel's request for attorneys' fees and costs shall waive and forfeit any and all rights to appear separately or object. All Eligible Settlement Class Members shall be bound by the Settlement and by all orders and judgments in this Case.

5.      No later than fourteen (14) calendar days before the Notice Deadline, the Parties shall file a motion requesting that the District Court grant final approval of the Settlement, and Class Counsel shall file a motion for payment of attorneys' fees and costs. No later than fourteen (14) calendar days after the Notice Deadline, the Parties will file a supplemental memorandum in support of final approval of the Settlement to inform the District Court of any Class Members who have opted out of the Settlement and to respond to any Objections to the Settlement.[1]

6.      Subject to the District Court's availability and direction and no earlier than twenty-one (21) days after the Notice Deadline and ninety (90) days after service of CAFA notice (as described in Section III.E.3, above), a Fairness Hearing shall be held for the District Court to determine whether to enter a Final Approval Order that grants final approval of the Settlement, including Class Counsel's Attorneys' Fees Award and Costs Payment, the Settlement Administration Expenses Award, and the Service Awards to the Named Plaintiffs, and to enter judgment dismissing all claims with prejudice and without costs (except as specifically provided in this Agreement).

7.      After entry of the Final Approval Order, the District Court shall have continuing jurisdiction for the purposes of enforcement of the Settlement and addressing settlement administration matters and such post-judgment matters as may be appropriate under court rules.

8.      If the District Court does not enter an Order preliminarily or finally approving the Settlement, or if the Settlement does not become final for any other reason, this

---

[1] If either of these deadlines fall on a weekend or Court holiday, the Parties may file the brief on the first following business day.

Agreement shall be null and void.  In such case, the parties shall work together in good faith to resolve any obstacles to Court approval.  If approval cannot be obtained despite such good faith efforts, the parties shall proceed in all respects as if this Agreement had not been executed.

F.   Settlement Administration

1.      The Settlement Administrator shall be responsible for Notice mailings to the Class; tracing undeliverable mailings; recording and tracking responses to the mailings to the Class Members; tracking and responding to any inquiries made by Class Members; establishing and maintaining a Qualified Settlement Fund ("QSF") and depositing the Total Settlement Amount into the QSF; calculating Settlement Awards; calculating appropriate tax withholdings; issuing the necessary checks for all Settlement Awards to Eligible Settlement Class Members; logging returned checks and making one attempt to obtain an updated address for returned checks; issuing the Service Award payments, the Attorneys' Fees Award payment, the Costs Payment, and the Settlement Administration Expenses Award payment; issuing all required tax documents to Eligible Settlement Class Members; performing all related tax reporting to taxing authorities; and any other related tasks mutually agreed to by the Parties. Eligible Settlement Class Members residing outside the United States will be provided with an electronic transfer option to receive their Settlement Award.

2.      Any personal Class Member data provided to the Settlement Administrator pursuant to this Agreement shall be used solely for the purposes of administering this Settlement and not for any other purpose. The Settlement Administrator shall maintain all such data as private and confidential and shall not disclose such data to any persons, entities (including government entities), except as required by this Agreement, by law, or by Court order. Notwithstanding the foregoing, the Settlement Administrator may disclose individual Class Member data to the individual Class Member to whom the data applies.

3.      Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Counsel for the Parties an electronic report setting forth the names of any Class Members who submitted a Valid Exclusion Request or Objection in conformity with this Agreement.

4.      The Settlement Administrator shall retain copies of all exclusion requests and Objections returned, along with their envelopes.

5.      As part of seeking the District Court's final approval of this Settlement, the parties will apply to the District Court for approval of the Settlement Administration Expenses Award. The costs, fees and expenses incurred by the Settlement Administrator in administering this Settlement shall be paid from the Settlement Administration Expenses Award approved by the Court, which shall not exceed $80,000.

6.      Within three (3) days of the Effective Date, the Settlement Administrator shall pay the Attorneys' Fees Award and Costs Payment approved by the Court to Gordon Tillden and shall pay any Service Awards approved by the Court to the Named Plaintiffs by delivering the Service Award checks to Gordon Tilden. These payments will not be subject to any withholdings. Within fourteen (14) days following the Effective Date, the Settlement Administrator shall issue Settlement Award checks to all Eligible Settlement Class Members, along with required tax forms in mailing envelopes listing the Settlement Administrator's return address.

7.      Should any mailed Settlement Award check be returned as undeliverable, the Settlement Administrator shall attempt one trace to locate a good address and, if located, shall make a second attempt at mailing the check. If such check is again returned as undeliverable, no further attempts of mailing the check are required to be made and the Settlement Administrator shall promptly provide the name of that Class Member to Class Counsel and Counsel for SEIU 775. Notwithstanding the foregoing, the Settlement Administrator may mail a check to a Eligible Settlement Class Member at an address obtained by other means if the Eligible Settlement Class Member's check is returned as undeliverable or upon the Eligible Settlement Class Member's request for the same (*e.g.,* if Plaintiffs, SEIU 775, Class Counsel, or another Class Member provides the Settlement Administrator an address for a Eligible Settlement Class Member not previously provided or obtained through a trace).

8.      With regard to all Settlement Award checks that remain uncashed one-hundred eighty (180) days following issuance of the check to a Eligible Settlement Class Member ("the First Distribution") without the Eligible Settlement Class Member having provided an updated mailing address within the one-hundred eighty (180) day period, the Settlement Administrator will stop payment on the check, the Eligible Settlement Class Member who has not cashed the check will have no interest in the Settlement Award (that is, such Settlement Award will not be the property of the Eligible Settlement Class Member), and the funds from the uncashed check will be considered residual funds ("Residual Funds"). In addition, the Settlement Administrator will amend the payments reported to the IRS if any Settlement Award checks are not cashed.

9.      If after nine (9) months from the Initial Mail Date, the total net amount of Residual Funds from the Net Class Fund for the Objector Sub-Class exceeds $10 per class member after deducting the total cost of redistribution, such Residual Funds will be redistributed on a pro-rata basis (based on the formula described in Section III.B.4 above) to those Eligible Settlement Class Members within the Objector Sub-Class who have cashed their settlement checks ("the Second Distribution"). The amounts of any Settlement Award checks from the Net Class Fund for the Objector Sub-Class that remained uncashed after thirty (30) days following the Second Distribution (or if there is no Second Distribution) will revert to the Union.

10.     Nine (9) months from the Initial Mail Date, any Residual Funds from the Net Class Fund for the Non-Objector Sub-Class will revert to the Union.

G.   Miscellaneous Provisions.

1.     This Agreement may be amended or modified only by a written instrument signed by counsel for both Parties.

2.     This Agreement constitutes the entire Agreement among these Parties.  No representations, warranties or inducements have been made to any Party concerning this Agreement, other than the representations, warranties and covenants contained and memorialized in this Agreement and the Notice (Exhibit 1).

3.     This Agreement does not constitute an admission by SEIU 775 that it has taken any action with respect to any of the Plaintiffs or any of the Class Members, that was wrongful or in violation of any statute, law, regulation, or legal right.  Similarly, this Agreement does not constitute an admission by Plaintiffs or any of the Class Members (whether individually or collectively) that any of their claims are without merit in law or fact. Instead, the Parties are entering into this Agreement solely as a compromise of disputed claims, and to avoid the further costs, delays and risks of litigation.

4.     The parties and their counsel will cooperate with each other and use their best efforts to implement this Settlement.  If the Parties are unable to reach agreement on the form or content of any document needed to implement this Settlement or this Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement or this Agreement, then either Party may seek assistance from the District Court to resolve such disagreement.

5.     Except as necessary to enforce the terms of this Agreement, to facilitate the terms of this Agreement, or by Court order, Class Counsel shall maintain in confidence and shall not produce to persons or entities who are not a Party or Settlement Administrator any personal, confidential, financial, or sensitive information relating to Class Members including but not limited to any of the Class Member information received pursuant to the terms of this Settlement.

6.     All notices to counsel provided herein shall be sent by electronic mail to:

Plaintiffs and the Class:

Michael P. Brown: mbrown@gordontilden.com


Defendant SEIU 775:

Michael C. Subit: msubit@frankfreed.com

7.     This Agreement shall be binding upon, and shall inure to the benefit of, the successors of the parties hereto, as previously defined.

8.     All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Washington.

9.     This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Copies of such signed counterparts may be used in lieu of the originals for any purpose.

10.    The Parties believe this is a fair, reasonable and adequate settlement, and have arrived at this Settlement through arm's-length negotiations, assisted by an experienced mediator, and taking into account all relevant factors, present and potential.

**IT IS SO AGREED**.

Dated: _____

**Susan Routh,**
**Individually and on Behalf of the Class**

Dated: _____

**Linda Eby,**
**Individually and on Behalf of Class**

Dated: _8-9-2019_

**Mary Jane Olson,**
**Individually and on Behalf of the Class**

Dated: _____

**Doug Schlyer,**
**Individually and on Behalf of the Class**

Dated: _____

**SEIU 775**

**APPROVED AS TO FORM**

Dated: _____

**Michael P. Brown**
**Counsel for Named Plaintiffs and the Class**

**APPROVED AS TO FORM**

Dated: _____

**Michael C. Subit**
**Counsel for SEIU 775**

7.     This Agreement shall be binding upon, and shall inure to the benefit of, the successors of the parties hereto, as previously defined.

8.     All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Washington.

9.     This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Copies of such signed counterparts may be used in lieu of the originals for any purpose.

10.    The Parties believe this is a fair, reasonable and adequate settlement, and have arrived at this Settlement through arm's-length negotiations, assisted by an experienced mediator, and taking into account all relevant factors, present and potential.

**IT IS SO AGREED.**

Dated: _____

_____
**Susan Routh,**
**Individually and on Behalf of the Class**

Dated: 8/22/19

_____
**Linda Eby,**
**Individually and on Behalf of Class**

Dated: _____

_____
**Mary Jane Olson,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**Doug Schlyer,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**SEIU 775**

**APPROVED AS TO FORM**

Dated: 8/22/19

_____
**Michael P. Brown**
**Counsel for Named Plaintiffs and the Class**

**APPROVED AS TO FORM**

Dated: _____

_____
**Michael C. Subit**
**Counsel for SEIU 775**

14

7.      This Agreement shall be binding upon, and shall inure to the benefit of, the successors of the parties hereto, as previously defined.

8.      All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Washington.

9.      This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Copies of such signed counterparts may be used in lieu of the originals for any purpose.

10.     The Parties believe this is a fair, reasonable and adequate settlement, and have arrived at this Settlement through arm's-length negotiations, assisted by an experienced mediator, and taking into account all relevant factors, present and potential.

**IT IS SO AGREED.**

Dated: ___8/15/2019___

_____Susan Routh_____

**Susan Routh,**
**Individually and on Behalf of the Class**

Dated: _____

_____

**Linda Eby,**
**Individually and on Behalf of Class**

Dated: _____

_____

**Mary Jane Olson,**
**Individually and on Behalf of the Class**

Dated: _____

_____

**Doug Schlyer,**
**Individually and on Behalf of the Class**

Dated: _____

_____

**SEIU 775**

**APPROVED AS TO FORM**

Dated: _____

_____

**Michael P. Brown**
**Counsel for Named Plaintiffs and the Class**

**APPROVED AS TO FORM**

Dated: _____

_____

**Michael C. Subit**
**Counsel for SEIU 775**

14

7. This Agreement shall be binding upon, and shall inure to the benefit of, the successors of the parties hereto, as previously defined.

8. All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Washington.

9. This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Copies of such signed counterparts may be used in lieu of the originals for any purpose.

10. The Parties believe this is a fair, reasonable and adequate settlement, and have arrived at this Settlement through arm's-length negotiations, assisted by an experienced mediator, and taking into account all relevant factors, present and potential.

**IT IS SO AGREED.**

Dated: _____

_____
**Susan Routh,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**Linda Eby,**
**Individually and on Behalf of Class**

Dated: _____

_____
**Mary Jane Olson,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**Doug Schlyer,**
**Individually and on Behalf of the Class**

Dated: 8/20/19

_____
**SEIU 775**

**APPROVED AS TO FORM**

Dated: _____

_____
**Michael P. Brown**
**Counsel for Named Plaintiffs and the Class**

**APPROVED AS TO FORM**

Dated: 8/23/2019

_____
**Michael C. Subit**
**Counsel for SEIU 775**

14

7.     This Agreement shall be binding upon, and shall inure to the benefit of, the successors of the parties hereto, as previously defined.

8.     All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Washington.

9.     This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Copies of such signed counterparts may be used in lieu of the originals for any purpose.

10.     The Parties believe this is a fair, reasonable and adequate settlement, and have arrived at this Settlement through arm's-length negotiations, assisted by an experienced mediator, and taking into account all relevant factors, present and potential.

**IT IS SO AGREED.**

Dated: _____

_____
**Susan Routh,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**Linda Eby,**
**Individually and on Behalf of Class**

Dated: _____

_____
**Mary Jane Olson,**
**Individually and on Behalf of the Class**

Dated: _____8/22/19_____

_____
**Doug Schlyer,**
**Individually and on Behalf of the Class**

Dated: _____

_____
**SEIU 775**

**APPROVED AS TO FORM**

Dated: _____

_____
**Michael P. Brown**
**Counsel for Named Plaintiffs and the Class**

**APPROVED AS TO FORM**

Dated: _____

_____
**Michael C. Subit**
**Counsel for SEIU 775**

Dated: _8/22/19_

_Sandy Schlyer_

**Sandy Schlyer,**
**Individually and on Behalf of the Class**